## G., C. & S. F. R'y Co. v. Eugene Wallen.

(Case No. 2125.)

1. Railroads—Negligence—Passenger leaping from train—Personal injuries—Verdict—Insufficient evidence—See this case for evidence held insufficient to support a verdict against a railway company in a suit by a passenger for damages for personal injuries produced by her leaping from defendant's train, under a sudden apprehension of danger.

2. Same—Suit for damages—Evidence—Negligence—In a suit against a railway company for damages for an injury to the person from negligence, to entitle the plaintiff to recover, it is not enough that the evidence shows that the injured person did only what a prudent person would have done under the same circumstances, but it must likewise show that the defendant committed some fault, or was guilty of some negligence, which contributed to the injury.

3. Duty of trial court—Verdict of jury—Insufficient evidence—Motion for new trial—The duty of a trial judge is not confined to advising the jury of the law of the case; but if the testimony does not sustain the finding of the jury, their verdict should be set aside and a new trial be granted.

Appeal from Burleson. Tried below before the Hon. J. B. McFarland.

This was a suit by Eugene Wallen against the Gulf, Colorado and Santa Fe railway company to recover damages for injuries sustained by his wife, Carrie Wallen, in jumping from a passenger train of the defendant, to avoid what she supposed would be a collision with defendant's freight train, which was at the time approaching from behind. Defendant pleaded general denial and contributory negligence. The trial was by jury, and resulted in a verdict in favor of plaintiff for $5,000. Defendant made a motion for new trial, but the court overruled the motion, and rendered judgment on the verdict. Defendant appealed.

Mrs. Carrie Wallen testified: "I am the wife of Eugene Wallen, the plaintiff in this suit. My husband and I were, on August 15, 1883, passengers on a train of the Gulf, Colorado and Santa Fe railway company. The train stopped between Temple and Rogers, and remained stationary about an hour, the rear car, which was the one occupied by us, being, during the stoppage, on an embankment. Whilst our train was stationary, some gentlemen near the rear door of the car cried out, 'Here comes a train right upon us.' The other passengers and I sprang to our feet and scrambled out of the door of the car. I ran out with my husband at the front door, and jumped to the ground, a distance of ten feet. After reaching the ground, I saw a train standing on the track in rear of the passenger train, and distant from it about one hundred yards. It was not in motion, but had stopped. I did not see it until I had jumped, and had had no

notice from persons in charge of the passenger train that a freight train was due or expected. I jumped from the passenger train after hearing that a train was coming upon us, from fear of being killed, and, in jumping, I was seriously hurt; that was my first ride on a railway. I did not seek to discover the danger, but depended on what I heard.''

Eugene Wallen testified : ''About eleven miles north of Rogers, in Bell county, the train on which my wife and I were riding, stopped and remained stationary about an hour. While stationary a freight train approached from the rear. I heard some one say 'here comes a freight train right upon us.' I arose from my seat, looked back through the rear door, and saw the freight train coming rapidly towards the passenger train, and about four hundred yards distant. I said to my wife, let's get off, and we ran to the front door and out of the car as fast as we could. I jumped from the platform of the car, and my wife immediately followed. Nearly all the passengers jumped from the train. The car my wife and I were in, was on an embankment, and it was about ten feet from the platform to the ground. I do not know who it was that gave the alarm about the approach of the freight train. After commencing to leave the car, I did not look back until I had reached the ground, when I looked and saw the freight train about one hundred yards in the rear of the passenger train, and about stopped. If, after getting out on the platform, I had looked back through the car, I could have seen that the freight train was 'slowing up,' and that there was no danger of a collision ; but I did not take the time to look. There seemed to be a general panic amongst the passengers. There was no collision, and if my wife and I had remained on the car, she would not have been injured.''

J. W. Stevenson testified: ''At the time of the occurrence complained of, I was conductor in charge of the freight train that came up in the rear of the passenger train. My train was flagged, and stopped at what I consider a safe distance from the other. I suppose I was a half mile distant from the passenger train when I first saw it, and I ordered the brakes on my train put on, and my engine reversed. The conductor and a brakeman of the passenger train signaled my train to stop as soon as it came in sight; but there was at no time any danger of my train's running into the passenger train, as we saw, without any signal, the latter in ample time to stop.''

Geo. K. Lowell testified : ''I was conductor on the passenger train mentioned. It had been stopped because of the left hand, main connection's having melted out; this necessary delay threw us back on freight time. When it was nearly time for the freight to be due,

I left where they were at work on the engine, went to the rear of my train, and sent up the track my brakeman, to flag the freight train. When the latter came in sight, a 'drummer' named Kline cried out, 'jump, there is a train coming upon us.' At that time the freight train was one-third of a mile distant from the passenger train. As soon as I saw some of the passengers leaving the cars, I called out to them to remain on the train. The freight train stopped about four hundred yards distant from the passenger train. My brakeman, as soon as it came in sight, signaled it to stop."

H. P. Garrett testified: "I am sixty-seven years old, am a farmer and surveyor, and live in Washington county. The passenger train stopped on account of a heated axle. I was apprised of the approach of the freight train by the blowing of the whistle. I was standing about midway of the rear car of the passenger train, where I could plainly, see through the rear door. When my attention was attracted by the blowing of the whistle, the freight train was distant fully one-fourth of a mile, and running slowly, and it was at least one hundred yards from the passenger train when it stopped. I saw that the freight train was under control, and I apprehended no danger. When I saw some of the passengers jumping off the train, I called out 'no danger.' The freight train was being checked up and was under control when I first saw it."

Other witnesses, who were passengers on the train, testified substantially the same as H. P. Garrett. Several who jumped from the train, testified that they did not see the freight train at all, but were alarmed by what they saw others doing.

The drummer did not testify in the case, and it does not appear what became of him.

W. W. Searcy, of counsel for the defendant, in his argument to the jury, made use of the following language: "The plaintiff has no right to complain of the railroad company; she jumped from the train on account of an alarm given by a Jew drummer—and if it had not been for that everlasting Jew drummer, there would have been no trouble. There was no occasion for alarm, and if defendant had not been a corporation, and supposed to have plenty of money, there would have been no suit brought by plaintiff."

In the concluding argument for the plaintiff, Judge Broaddus said: "The railroad company is a corporation without soul or conscience, but, notwithstanding this, they have got a big pocket, and this you can reach, and if you fail to do it now, you may never again have the opportunity. The employes of a company will walk through the train and talk to passengers like puppies; so, while you have a chance, teach

them the lesson that they cannot be reckless with so valuable a thing as human life."

*Garrett, Searcy & Bryan*, for appellant, cited: 1 Suth. on Damages, 726-730; Drake on Attachment, sec. 175; Field on Damages, sec. 559; Wallace *v.* Finberg, 46 Tex. 47; Schwartz *v.* Burton, W. & W. Cond. Rep., sec. 1216; Wallis, Landes & Co. *v.* Eichelberger, W. & W. Cond. Rep., sec. 134; G., H. & S. A. R'y. Co. *v.* Davidson, 61 Tex. 205; Watson *v.* H. & T. C. R'y. Co. 58 Tex. 438; Dwyer *v.* Bassett, 63 Tex. 274; T. & P. R'y. Co. *v.* Murphy, 46 Tex. 362; Hodde *v.* State, 8 Ct. of App. 385; T. & P. R'y. Co. *v.* R. G. Latham, W. & W. Cond. Rep., sec. 251; T. & P. R'y. Co. *v.* Hurless, W. & W. Cond. Rep., 582; G., H. & S. A. R'y. Co. *v.* Bracken, 59 Tex. 71; Garvin *v.* Stover, 17 Tex. 295; Edmonson *v.* Silliman, 50 Tex. 112; Chandler *v.* Meckling, 22 Tex. 42; I. & G. N. R'y. Co. *v.* Ormand, Tex. Law. Rev., vol. v., No. 42, p. 646; H. & T. C. R'y. Co. *v.* Schmidt, 61 Tex. 286; Long *v.* Steiger, 8 Tex. 462; Taylor *v.* Ashley, 15 Tex. 50; Patton *v.* Evans, 15 Tex. 363; Willis *v.* Lewis, 28 Tex. 191; T. & St. Louis R'y. Co. *v.* Jarrell, 60 Tex. 269; Rules Dist. Court, No. 39, 40, 41 and 121; Willis *v.* McNeil, 57 Tex. 475; Thomas *v.* State, 43 Tex. 658; Hatch *v.* State, 8 Tex. Ct. App., 416; Waters *v.* Pope, W. & W. Cond. Rep. 714; Zapp *v.* Michaelis, 58 Tex. 275.

*W. K. Homan* and *Broaddus & Batte*, for appellee, cited: Newman *v.* Dodson, 61 Tex. 91; Stuart *v.* W. U. T. Co., Tex. Law Rev., vol. v, p. 714; T. & P. R. R. Co. *v.* Curry, Tex. Law. Rev., vol. v, p. 280; G., C. & S. F. R'y. Co. *v.* Evansich, 61 Tex. 3; I. & G. N. R'y. Co. *v.* Gilbert, Tex. Law Rev., vol. v, p. 698; Hays *v.* I. & G. N. R'y. Co., 46 Tex. 272; Field on Damages, 615, 667; H. & T. C. R'y. Co. *v.* Gorbett, 49 Tex. 573; G. H. & S. A. R'y. *v.* Smith, 59 Tex. 406; I. & G. N. R'y *v.* Halloren, 53 Tex. 46; Thompson on Negligence, 1092, sec. 8, 1174, sec. 20; 4 Wait's Acts. and Def., p. 719; Twomley *v.* Central Park R'y. Co., 69 N. Y., 158; Buel *v.* N. Y. Central R'y. Co., 31 N. Y. 314; Coulter *v.* Am. Exp. Co. 56 N. Y., 585; Wilson *v.* N. P. R'y. Co., 26 Minn. 278; Iron R. R. Co. *v.* Mowery, 36 Ohio St. 418; s. c., 3 Am. & Eng. R. R. Cas. 351, and note; Mark *v.* St. P. M. & M. R'y. Co., 12 Am. & Eng. R. R. Cas. 86; T. & P. R'y. Co. *v.* Garcia, 62 Tex. 289; Heidenheimer *v.* Thomas, 63 Tex. 287; I. & G. N. R. R. *v.* Irvine, Tex. Law Rev., vol. v, p. 723.

ROBERTSON, ASSOCIATE JUSTICE.—The defendant neither caused nor contributed to the injury of plaintiff's wife, unless it allowed the

freight train to come so near to or so rapidly towards the passenger coach as to frighten the passengers. It does not appear from the testimony that a single one of those who leaped from the train, except the plaintiff, saw the freight train coming. When the plaintiff saw it, it was three or four hundred yards away, and, as he says, appeared to be moving rapidly. He does not state that he supposed from what *he* saw that there would be a collision. No one left the train upon his own perception of danger. On the contrary, those who used their own senses, felt no alarm, and remained in the cars. Whatever may have been the speed of the train when three or four hundred yards away, it was slowed to a full stop, at least fifty yards from the passenger coach. There was, therefore, no actual danger. There is no proof, direct or circumstantial, that a single passenger was frightened by observing the manner in which the train approached the coach. The statement of facts develop no cause whatever for the panic, which seized some of those in the cars, except a remark, made by some one, that "the freight train is upon us." Not a single witness ascribes this remark to any agent of the defendant   There was some positive testimony that it was made by a *drummer*.

The plaintiff's wife may have done only what a prudent person would have done, under the same circumstances, and the defendant still not be liable. If a ruffian had commenced the discharge of a revolver in the car, it would have been prudent for people to get out, but the carrier would not have been liable unless it committed some fault. The ruffian could be held, as could a passenger, who, in brutal sport, raises a false alarm and causes damage.

The district court should have granted the defendant's motion for a new trial. The judge's duty is not confined to advising the jury of the law of the case. If the testimony does not sustain the finding, the verdict should be set aside. We can find in the statement of facts in the record here no proof that the defendant was guilty of any act of negligence, contributing to the injury of plaintiff's wife. In view of another trial, we refrain any further comment upon the testimony. The remarks excepted to in the closing speech of plaintiff's counsel, were not authorized by anything in the record, and, in the remarks of opposing counsel, stated as provocation, we fail to discover any justification. Because, as presented here, the verdict was not authorized by the evidence, the judgment is reversed and the cause is remanded.

**Reversed and Remanded.**

[Opinion delivered February 26, 1886.]