## RAILWAY COMPANY *v.* MURRAY.

Decided December 19, 1891.

1. *Railroad—Negligence—Passenger leaping from train.*
   Where a passenger, through the negligence of a railroad company, is placed in a situation apparently so perilous as to render it prudent for him to leap from the train, whereby he is injured, he will be entitled to recover damages, although he would not have been hurt if he had remained.

2. *Evidence—*Res gestae.
   In such a case testimony as to the opinions, language and acts of other passengers at the time of the apparent peril is admissible to show how the situation appeared to plaintiff and his fellow passengers, at the time he leaped from the train, and whether he acted prudently.

3. *Evidence—Expressions of feeling.*
   In an action to recover damages for personal injuries, declarations of the plaintiff as to the existence of present pain are admissible in evidence; whether the pain was real or feigned is for the jury to determine.

APPEAL from *Washington* Circuit Court.
JAMES M. PITTMAN, Judge.

STATEMENT BY THE COURT.

Murray sued the St. Louis & San Francisco Railway Company for damages which were occasioned by the negligence of the company in operating its trains.

At the trial evidence was adduced tending to prove the following facts: On the 29th of November, 1887, plaintiff was a passenger on the defendant's train from Delaney to St. Paul. One and a half or two miles from St. Paul the train, immediately after it passed a curve in the road, stopped and remained standing for a short while. This was in the night. There were two red lights on the rear of the train. Plaintiff was in a coach, it being the last coach in the train except one, which was a caboose. While the train was standing still, another train was heard approaching from the rear on the same track. The conductor immediately went down the track about twenty feet and with his lantern signaled to it to stop. About this time a passenger in the coach with plaintiff looked out of the window and saw the locomotive of the approaching train and hallooed out to the passengers, " Here comes another train running into us," and said to them that they " had better get out." The plaintiff and other passengers, hearing and seeing the approaching locomotive, immediately and in haste left the train. In getting off plaintiff fell into a ditch and hurt one of his shoulders. The second train proved to be a locomotive and a caboose, and was running about ten miles an hour and stopped within about thirty feet of the passenger train. Two or three witnesses testified that the distance was 60 or 100 feet. For the damages suffered by plaintiff on account of his fall this action was brought.

Evidence tending to prove other facts was adduced, but sufficient has been stated for the purposes of this opinion.

One witness, who was a passenger on the train at the time the plaintiff was, was allowed to testify, over the objection

of the defendant, as follows : "I got off the train and I got off to avoid danger. * * * I have been working at business that requires me to ride on railroads much of my time for the last ten years, and from the circumstances I thought it prudent to get off the car." Murray was allowed to testify that a passenger on the same train said, as the locomotive and caboose approached: "Here comes another train running into us, and said we had better get out of there." Rivercomb testified that, during the night on which plaintiff was hurt, he assisted him in pulling off his coat, and on the next morning assisted him in putting it on, and that he complained of being hurt in the shoulder. C. M. Levisee testified that he was a brakeman on the second train, and as follows: "If we had had a train of loaded cars of the usual length, we could not have stopped the train so quick. An engine and caboose can be stopped sooner than a train of cars. The ordinary train of cars could not have been stopped in time to have prevented running into the train." To the foregoing testimony of Murray, River-comb and Levisee, the defendant objected at the time it was introduced, and saved his exceptions.

The following instructions were given to the jury over the objections of the defendant:

"The burden is upon the plaintiff to show by a preponderance of evidence the truth of the allegations in his complaint.

"The main issues for your consideration are, first, did the plaintiff receive an injury; second, was such injury occasioned or caused by the negligence, carelessness or improper management of the defendant; third, did the plaintiff by his own negligence contribute to the injury. Each of these propositions you are to determine from the evidence.

"If you should find that there was an injury received by the plaintiff, and that the same was caused by the negligence, carelessness or improper management of the defendant, you will find for the plaintiff unless you find also that the plain-

tiff by his negligence contributed to such injury. In case you should find that the plaintiff's negligence occasioned or contributed to such injury (if any) you will find for the defendant.'

" The mere fact that the plaintiff through fear and apprehension of danger did an act which was the immediate cause of injury to himself is not of itself sufficient to authorize a finding for him ; but to authorize such finding you must also find that the defendant was guilty of some act of negligence, carelessness or improper management in running his train in close proximity to plaintiff, which was sufficient to create in the mind of a reasonable and prudent person such fear and apprehension.

" Should you find that the defendant was guilty of negligence, carelessness or improper management, and that an injury to the plaintiff was occasioned thereby, you will consider then whether the plaintiff was himself guilty of contributory negligence.

" If you should find from the evidence that, by the negligence of the defendant, the plaintiff was put in a position of great peril, and in attempting to escape that peril he did an act also dangerous, from which an injury resulted to him, such act would not necessarily be an act of contributory negligence, such as would prevent him from a recovery for such injury.

" The test of contributory negligence under such circumstances is, was his attempt an unreasonable, precipitate or rash act, or was it an act which a person of ordinary prudence might do under the like existing circumstances; and it is not to be determined by the result of the attempt to escape, nor by the result that would have followed had the attempt not been made.

" If you should find from the evidence that the plaintiff was carelessly, negligently or improperly placed by the defendant in a position of danger, while in the car of the defendant, by reason of the defendant running a locomotive and caboose in close proximity to the car in which the

plaintiff was (if he was in such car), then the plaintiff would have the right to judge of the danger in remaining in such car, as also the danger in attempting to escape, from the circumstances as they appeared to him, and not by the result. And if he, in making such an attempt to escape, used such care as a prudent man under such circumstances should have used, and in doing so received an injury, he should recover."

A verdict for $1000 was returned in favor of plaintiff against the defendant; judgment was rendered accordingly; and a motion for a new trial having been filed and overruled, the defendant appealed.

*E. D. Kenna* and *B. R. Davidson* for appellant.

1.   It was error to admit the statements of fellow-passengers.   Witnesses (except experts) must state *facts*, and not their *conclusions* or *opinions*.   24 Ark., 251.

2.   The better rule is that statements of fellow-passengers may not be received as evidence.   81 Ill., 19; 50 Ark., 397.

3.   The statements and acts of Murray, Rivercomb and Moore were not admissible as part of the *res gestae*.   51 Ark., 510; 48 *id.*, 473; 50 *id.*, 397; 9 N. E. Rep., 505; 28 A. & E. R. Cas., 467; 7 *id.*, 414; 11 *id.*, 630; 45 N. Y., 574; 38 N. W. Rep., 154; 6 S. W. Rep., 737; 23 A. & E. Ry. Cases, 438; 11 Allen, 322; 38 Mich., 537.

4.   If the train was under *full control*, and those on it were keeping a proper lookout, and could stop at any time without collision, there could be no cause of action, even though plaintiff became frightened by the acts of the passengers and sight of the approaching train.   If one takes fright at the acts of another pursuing a legitimate calling, where there is *no danger* whatever—where he is not put in peril—and injures himself, he has no cause of action.   26 A. & E. Ry. Cases, 219; 33 *id.*, 533.

5.   One guilty of negligence is only liable for the natural and ordinary results of same.   25 A. & E. R. Cases, 451.

6. The verdict is against the overwhelming weight of evidence ; contrary to the instructions of the court ; and by his own evidence plaintiff was guilty of contributory negligence, and the verdict should be set aside.    14 A. & E. R. Cases, 648 ; 29 *id.*, 297 ; 32 *id.*, 109 ; 19 *id.*, 376.

*L. Gregg* and *J. D. Walker* for appellee.

1. The complaint stated a cause of action and the evidence sustained it ; the verdict cured any defects of pleading.    2 Ark., 512.    This court will not reverse if there is any evidence to support the verdict.    24 Ark., 251 ; 25 *id.*, 474.

2. The testimony of the witnesses and the statements of appellee tended to show his true condition, and were admissible.

3. The plaintiff, in view of supposed impending peril of his life, only did what a prudent person would ordinarily have done, and under the circumstances of this case was not guilty of contributory negligence.    See 49 N. Y., 47 ; 69 *id.*, 160 ; 1 Stark., 493 ; 13 Peters, 181 ; 3 N. W. Rep., 337 ; 1 Suth. on Dam., p. 63.

4. As to the admission of declarations of injured party to others.    See 37 N. W. Rep., 409 ; 1 N. Y. S., 536 ; 14 Pac. Rep., 237.

BATTLE, J., after stating the facts as above reported.

It is contended, on the part of appellant, that, if the train on which appellee was a passenger was standing still upon the track and the engine and caboose approaching it from the rear were under full control of those in charge of them, and the persons in charge were keeping a proper lookout and could have stopped them, at the rate of speed at which they were running, at any time, without collision, the appellee had no cause of action, notwithstanding he was frightened and leaped from the train and injured himself.    According to this contention the appellant was not liable for damages to appellee if it was using every precaution to prevent a collision of its trains ; and was under no obligations to

1. Liability of railroad for frightening passenger.

avoid frightening him, and thereby causing him to do an act which might have resulted in injury; and would not have been liable, if appellee had reasonably believed he was in great danger of being killed by a collision, and in the exercise of ordinary prudence had leaped from the train in order to save his life, and thereby injured himself. In other words, it could have, with impunity, scared him to any extent and forced him to make dangerous leaps to save his life, and thereby injure himself, provided the precaution it used was sufficient to prevent a collision, and the fact was the appellee would not have been hurt if he had remained on the train. But this is not true. Railroad companies in the carriage of passengers are required to use the utmost care and foresight and are held responsible for the slightest negligence. The first and most important duty incumbent on them is to provide for the safety of their passengers. To this end they are required to provide all things necessary to their security reasonably consistent with their business and "appropriate to the means of conveyance employed by them," and to exercise the highest degree of practicable care, diligence and skill, in the operation of their trains. *Arkansas Midland Railway* v. *Canman*, 52 Ark., 517. If they recklessly, unskilfully or negligently operate their trains, and thereby place their passengers in situations apparently so dangerous and hazardous as to create in the minds of the passengers reasonable apprehensions of peril and injury, and thereby excite alarm and induce them to make efforts to escape, and in the attempt to escape they receive personal injuries, the railroad companies are responsible for damages. *Jones* v. *Boyce*, 1 Starkie, 493; *Stokes* v. *Saltonstall*, 13 Peters, 181; *Caswell* v. *Boston & Worcester R. Co.*, 98 Mass., 194; *Twomley* v. *C. P. N. & E. R. R. Co.*, 69 N. Y., 158.

In order to render the railroad company liable for injuries received in an effort to escape an apprehended danger there must have been a reasonable cause of alarm occasioned by the negligence or misconduct of the company. If the effort

of the passenger to escape resulted from a rash apprehension of danger which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover. But if, on the other hand, he be placed, through the negligent or unskilful operation of its trains by the railroad company, in a situation apparently so perilous as to render it prudent for him to leap from the train, whereby he is injured, he will be entitled to recover damages, although he would not have been hurt if he had remained on the train.

On occasions where a passenger is suddenly confronted by imminent danger and peril he cannot reasonably be expected to calculate chances, or to deliberate upon the means of escape, but "must of necessity judge hastily of the danger of remaining where he is, as also of the danger of attempting to escape, by the circumstances as they, at the instant, appear to him, and not by the result." He acts upon the probabilities as they appear to him, and if he acts as a man of ordinary prudence, "placed in the same circumstances and under a like necessity of immediate action and decision," would have acted, and in so doing makes an effort to escape and is injured, the railroad company is responsible to him for his damages. See cases above cited, and *Wilson* v. *N. P. R. Co.*, 3 N. W. Rep., 337.

*The Chicago, Rock Island & Pacific Railroad Company v. Felton*, 125 Ill., 458, and *Gulf, Colorado & Santa Fe Railroad Co.* v. *Wallen*, 65 Texas, 568, cited by appellant to sustain its contention, do not controvert the rule as we have stated it, but recognize it as correct. In the former case the plaintiff's intestate was a passenger on the defendant's train. He was going from Ottawa to Joliet, in Illinois. From Ottawa to Chicago the defendant used a double track, and trains going in the same direction generally used one track and those going in the opposite direction used the other. At the time plaintiff's intestate was a passenger the tracks were covered with snow. The train on which he was riding ran into a snow-bank and stopped. At a point a short distance

from where it stopped and in the rear of it the road curves. It was impossible for a person looking from the point where the snow-bank was in the direction of the curve to tell whether a car beyond the commencement of the curve was upon the one track or the other. While the train was stopped at the snow-bank, plaintiff's intestate, on looking back, saw an engine with a snow-plow attached approaching from the direction of the curve. About this time a fellow-passenger remarked that it would run into the passenger train. One witness said " it looked as if it was coming into the train." About the same time an engine in front of the passenger train gave sharp, quick whistles. Whereupon plaintiff's intestate became alarmed and leaped from the car in which he was riding to the ground and was fatally injured. This was about 3 o'clock in the morning. The passenger train was standing on one track, and the engine with the snow-plow attached approached running on the other. There was no collision, and the intestate would not have been hurt if he had remained in the car. Justice Scholfield, in delivering the opinion of the court, said : " Since the right of recovery here is based upon the negligence of the defendant, it is not sufficient merely that plaintiff's intestate became alarmed by reason of appearances produced wholly or in part by the defendant—it must appear that that which produced the alarm and, through it, the injury was negligence of the defendant." Treating the signals given by the whistles as presenting the only question of negligence, he further said : " The burden is upon the plaintiff to prove this negligence, and that is not done by proof, alone, that a peculiar signal was given by an engine of the defendant, and that it caused or aggravated the alarm of the intestate. If the signal given was, under the circumstances, a proper one, it can not have been negligence to give it."

In the *Gulf, Colorado & Santa Fe R. Co.* v. *Wallen, supra,* " the plaintiff and his wife were passengers on a train on defendant's road, which stopped between two stations and remained standing for about an hour. While the train was

so standing another passenger called out, 'here comes a train right on us.' Other passengers jumped to their feet and scrambled to get out of the car door. Plaintiff looked through the rear door and saw a freight train coming towards the passenger train, and about 300 or 400 yards off. * * * He called to his wife and both ran to the car platform and jumped to the ground. His wife was seriously injured." The freight train stopped one hundred yards in the rear of the passenger train. The court said : " The defendant neither caused nor contributed to the injury of plaintiff's wife, unless it allowed the freight train to come so near to or so rapidly towards the passenger coach as to frighten the passenger. It does not appear from the testimony that a single one of those who leaped from the train, except the plaintiff, saw the freight train coming. When the plaintiff saw it, it was 300 or 400 yards distant, and, as he says, appeared to be moving rapidly. He does not state that he supposed from what he saw that there would have been a collision. No one left the train upon his own perception of danger. * * * The statement of facts develops no cause whatever for the panic which seized some of those in the cars, except a remark made by some one, that 'the freight train is upon us.' * * * The plaintiff's wife may have done only what a prudent person would have done under the same circumstances, and the defendant still not be liable. If a ruffian had commenced the discharge of a revolver in the car, it would have been prudent for people to get out, but the carrier would not have been liable unless it committed some fault. The ruffian could be held, as could a passenger, who, in brutal sport, raises a false alarm and causes damage. * * * We can find in the statement of facts in the record here no proof that the defendant was guilty of any act of negligence, contributing to the injury of plaintiff's wife."

The instructions which were asked by the plaintiff and given by the court and are set out in this opinion were substantially correct. They fairly submitted to the jury the

S C—17

question of fact upon the decision of which the plaintiff's right of recovery depended.

**2. Evidence —*Res gestæ.*** The testimony of the witness to the effect that he thought it was prudent to get off the train, and that he left it for the purpose of avoiding danger, and the testimony of another that a fellow-passenger said, "here comes another train running into us," and said, "we had better get out of there," and of Levisee, were admissible for the purpose of showing in some degree how the situation of appellee appeared to him and his fellow-passengers at the time he leaped from the train and was hurt, and that in so doing he acted as a man of ordinary prudence would have acted under the same circumstances.

**3. Expressions of feeling as evidence.** The testimony as to Rivercomb assisting appellee in pulling off and putting on his coat and appellee complaining of being hurt in the shoulder was not admissible as a part of the *res gestae*, but was admissible to show the existence of present pain and injury in the shoulder. And whether this action and complaint as to injury in the shoulder were real or feigned was for the jury to determine. *Insurance Co.* v. *Mosley*, 8 Wall., 397, 405, 407; *Bridge* v. *Oshkosh*, 67 Wis., 195; *Bacon* v. *Charlton*, 7 Cush., 586; *Barber* v. *Merriam*, 11 Allen, 322, 324; *Hatch* v. *Fuller*, 131 Mass., 574; *Atchison, etc., R. Co.* v. *Johns*, 14 Pac. Rep., 237, 245 and cases cited; *Bridge* v. *Oshkosh*, 37 N. W. Rep., 409, 411; 1 Greenleaf on Ev. (14th ed.), sec. 102.

Appellant contends that the verdict of the jury was against the decided preponderance of evidence, was not sustained by sufficient evidence, and should be set aside. If such was the case, the circuit court had the right and should have set it aside and granted a new trial. But the judge, who was present and saw and heard the witnesses testify and heard the testimony as it was heard by the jury and ought to be a better judge of the credibility of witnesses and the weight of the testimony than we, considering it as it appears on paper, can be, it seems, did not think as appellant contends. But be this as it may, it is not necessary for us to approve

the verdict.    There was evidence to sustain it, and, according to the rules which govern this court, we cannot disturb the same.

Judgment affirmed.