THE SPRING VALLEY COAL COMPANY

*v.*

MARY CHIAVENTONE.

*Opinion filed February 21, 1905.*

1. MINES—*what is gross negligence in operating mines.* It is gross negligence for a mining company to allow heavily loaded cars to be sent, without lights or signals or any one in attendance, down an inclined track in a dark and narrow passageway, where employees of the mine are required to be in discharge of their duties.

2. APPEALS AND ERRORS—*errors not urged as grounds for new trial are waived.* Alleged errors not urged as ground for sustaining the written motion for new trial in a suit at law cannot be considered by the Supreme Court.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding.

A. R. GREENWOOD, and GEO. S. SKINNER, for appellant.

J. L. MURPHY, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

The following statements and remarks found in the opinion of the Appellate Court we concur in and adopt:

"This is an appeal from a judgment of the circuit court of Bureau county awarding Mary Chiaventone $3000 damages for negligently causing the death of her husband, James Chiaventone, in appellant's coal mine. The deceased was employed by appellant in its coal mines and was what is known as a 'company man.' It was his duty to brush down the walls when apparently dangerous, and to load the loose rock and debris into cars and push them out to the haulways. On the 21st of November, 1902, while engaged in pushing a car of rock out on what is called the 'south-west' off the north fifth, he was struck by a car of coal coming down the

north fifth and killed. This north fifth was a passageway for cars of coal, coming from the face of the coal to the south-west entry, leading to the shaft. The north fifth was for a considerable distance back of the place of the accident on an incline, so that cars of coal would run down toward the entry with a great speed by force of gravitation. It was the practice to load cars with coal, start them down this north fifth without any one in charge, without lights or signals of any kind, and to permit them to go down the incline. The second left was a branch road that led to and connected by a switch with the north fifth. Loads coming out of the second left were brought to the junction with north fifth and thence over north fifth to the south-west entry, and thence to the bottom of the shaft. The deceased had brought a car of rock down out of second left to north fifth, and had pushed it to the latch, which is the point where the two tracks merge into one, and was in the rear of the car of rock, when a car-load of coal came down from above in north fifth and struck him, causing injuries from which he died a short time thereafter.

"The evidence shows that the deceased was in the line of his duty and at a place where he was required to be. The place where deceased was caught was narrow, and while he made an effort, in the brief space of time he had after he saw the car of coal coming, to get to a place of safety, yet he only had time to get off the track and get against the rib of coal on the left, which was too near the car to afford him any protection, the distance being only about eight inches. Had there been any warning before the car was too close to permit him to take more than one step he might have gone to the right and back a few feet and gotten into the mouth of the second left, but he did not have time for this movement, since the car came down almost noiselessly and there was no warning of any kind given. A Mr. Lucas, who was the only eye-witness to the accident, saved himself from injury by getting into the mouth of the second left, but he was on the right side and nearer to it than the deceased.

"That appellant was guilty of gross negligence in permitting heavy loaded cars to be sent down this incline, without light or signal of any kind, with nothing to retard its speed except sprags in the wheels, only requires a statement of facts to show. This passageway was dark and narrow. The cars moved rapidly and without much noise, and employees were required to be on the line in front of the descending cars. It would seem that a moment's reflection would satisfy any reasonable man that sooner or later this method of doing business would result in injury to some one.

"There are five counts in the declaration, so counsel say in their brief; but since the declaration is not abstracted we take it for granted that the declaration is properly drawn and will support a verdict upon any theory of the evidence. We are not required to look at the record to see what the declaration contains. No complaint is made of any instructions given or any rulings of the court on the trial, and only one refused instruction is complained of. The court gave sixteen instructions at the request of appellant, fully covering every question that was involved in the case. Even if the refused instruction be a correct proposition of law, the principle which it seeks to lay down is covered by another instruction given for appellant. We cannot point out the particular instruction, except to say it is found on page 78 of the abstract and is the third on that page. The instructions are not numbered, either in the abstract or record, as is the usual and better practice. But we do not regard the instruction as correct, and there was no error in refusing it. If the declaration states such a case as is made by the proofs, the right of recovery is clear. No variance is urged and the declaration is not abstracted, so we conclude that if any ground of objection existed, based on a variance between the case made by the proofs and the declaration, it is waived."

It might further be said in reference to the refused instruction complained of, that upon the motion for a new trial a written motion was filed by appellant, and the refusal of

the court to give any instructions upon behalf of the defendant (appellant here) was not presented to the court by the motion. The only error assigned in reference to the instructions was the third, which reads: "The court improperly gave to the jury the instructions asked by the plaintiff." We have uniformly held that when written motions for new trials are presented to the trial courts, the only errors that can be relied upon in this court must first be brought to the attention of the trial court, so that the case may not be tried by piecemeal in the various courts.

The only other error relied upon is, that the verdict is against the weight of the evidence and that the facts do not sustain the judgment. The refusal of the court to give the peremptory instruction is not relied upon as error, and as the verdict of the jury and judgment of the Appellate Court are final as to the facts and weight of the evidence, that question is not open for the consideration of this court. The abstract filed in this court is the same one filed in the Appellate Court, simply furnished with a new back, and all the references to the record are more brief than would ordinarily be found in a *præcipe* for making the record. The only mention of the declaration or its contents found in the abstract is "4. Declaration," which is nothing more than a reference to the page of the record where the same may be found. This is not even an attempt to comply with the rule. Without any effort on the part of appellant to preserve the questions it now presents and which are argued in the briefs, so that this court could pass upon the same, by presenting those questions to the trial court, and so making its abstract of the record that the court could examine the declaration intelligently without recognizing a glaring violation of its rules, the inference naturally follows that this appeal was prosecuted for delay and without expectation or belief upon the part of appellant that the court would or ought to reverse the judgment. Ten per cent damages will accordingly be allowed appellee, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*