SOUTHWESTERN DEVELOPMENT CO. VS BOYD.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 1174).

1.  *Master and Servant—Servant's Injuries—Fellow Servant.*

In an action brought against a coal mining company because of injury to a miner, alleged to have been a result of the incompetency of the person employed to sprag coal cars, evidence was not held to be sufficient to show incompetency.

2.  *Same—Res Ipsa Loquitur.*

The doctrine of "Res ipsa loquitur," which applies to injuries of passengers, cannot be applicable to a mining company in action brought against it for miner's injuries, caused by being crushed by a descending cage.

3. *Same—Liability of Employer.*

> In an action against a coal mining company for injuries to a miner received by being crushed by a descending cage the company is not liable when he signaled to descend and would have been uninjured if he had remained in his place, there being no evidence that the company was negligent.

Error to the United States Court for the Central District of Indian Territory; before Justice T. C. Humphry, October 18, 1905.

Personal injury action by Isaac Boyd against the Southwestern Development Company. From a judgment for plaintiff, defendant brings error. Reversed and remanded.

On September 7, 1905, the plaintiff below, defendant in error here, filed his complaint against the defendant, the Southwestern Development Company, plaintiff in error here. Subsequently the original complaint was amended, and the amended complaint alleges that the plaintiff was a freedman of the Choctaw Nation, Ind. Ter., and that the defendant was a foreign corporation, doing business in the Indian Territory, and says that at the time of the happening of the wrong and grievances hereinafter complained of the defendant was engaged in the work of sinking a coal mine and shaft and digging coal in the Central judicial district of the Indian Territory; that it had then and there certain machinery, agents, employes, and workmen engaged in its said business of sinking and operating said coal mine and shaft; that on or about the 16th day of March, 1905, the plaintiff, while engaged in the capacity of workman employed by the said defendant corporation in the work of loading cars of coal onto a cage in said shaft, was, on account of the fault, negligence, carelessness, and recklessness of the defendant, its agents and employes, negligently permitted a boy of tender years to cage and sprag trips of coal cars, which the defendant negligently permitted to run down an incline to where plaintiff was at work, and, while being so engaged in

the work of spragging, the said inexperienced boy let a trip of cars get away, and greatly imperil this plaintiff, who, in attempting to escape from the great danger, was greatly injured by being struck on the small of his back by the cage falling at a high rate of speed from the top of the shaft to the place where the plaintiff was at work, thereby mashing, bruising, and lacerating his side, and mashing, bruising, and breaking his back, resulting to the plaintiff in the loss of the use of both hips and legs, and in great pain and misery in his back and sides, and in consequence thereof the plaintiff was permanently injured; that said injuries occurred to plaintiff wholly and solely on account of the fault, carelessness, negligence, and recklessness of the defendant, its agents and employes, without any fault or negligence on the part of the plaintiff, in not using and exercising proper care, caution, and skill in bracing, casing, and timbering said shaft and proper means of escape from danger at the place where the plaintiff was at work, and in not properly bracing, casing, and timbering same so as to prevent accident from injury from properly handling cars laden with coal and the proper means of escape from danger at and around the place where the plaintiff was at work, and in employing incompetent labor to sprag trips of coal cars; that the plaintiff at the time of receiving his injuries was in the exercise of due care and caution, and had no knowledge, notice, or warning of the dangerous condition of the place in which he was working, or of the fact that a mere boy was spragging trips of cars laden with coal as aforesaid; and on account of said injuries plaintiff suffered great bodily pain and mental anxiety, and is permanently injured, in the sum of $10,000, and asks for judgment.    On October 4, 1905, defendant filed a demurrer to the complaint, on the ground that the complaint does not state facts sufficient to constitute a cause of action.    On October 9th, the demurrer was overruled by the court, and on October 18th defendant filed its answer to the amended complaint, and specifically

denies each and every allegation of the complaint, and, in addition thereto, charges the defendant in error, plaintiff below with contributory negligence. On November 7, 1905, the case was tried before a jury, who returned the following verdict: "We, the jury, being duly impaneled and sworn, do find from the law and the evidence in favor of the plaintiff and against the defendant, and assess the damages in the sum of $7,500. J. N. Green, Foreman." Defendant filed motion for new trial, which was overruled by the court, and judgment rendered upon the verdict, to which the defendant excepted, and was granted 30 days within which to file bill of exceptions. On Decembe 4, 1905, petition for writ of error and assignments of error was filed and allowed by an associate justice of the Court of Appeals, and the case was brought to this court.

*Clifford L. Jackson*, for plaintiff in error.

*J. M. Humphreys*, for defendant in error.

TOWNSEND, J. (after stating the facts as above). The plaintiff in error has filed eight assignments of error, the first of which is as follows: "Whilst defendant in error, the first witness on the stand in the trial of this case, was being cross-examined by counsel, the trial court undertook to` determine the law of the case without ever having heard the facts. The court at that time, amongst other things, stated: 'The holding of the court will be that, if the negligence of the company put danger in the mine, and this man had to go, or believed he had to go, it makes no difference whether he took the danger route or not the danger route, if it appears as to whether he would have remained here or there, and not have been hurt, that will not prevent his recovery if the negligence of the defendant put the danger in the mine before him so that in fleeing he got hurt, whether he took the right road or the wrong road; like two trains coming to meet, and the passengers in the trains see the trains are going to come together, and in their fright jump out and break their legs, and the trains get right up together, and if a

man had kept his seat he wouldn't have been hurt at all, but the railway companies are liable because they brought the danger there, and the passenger, to save his life, jumped out. The question in this case from the statements made at the first, is whether defendant's negligence put this matter in shape, whether it was the fellow servants did it or whether it was contributory negligence because the plaint'ff was not where he ought to be, and these are all based from the statements I gather. Of course, I don't know what the defense is yet, and on the objection I hold that it is wholly immaterial, whether he could have stood in some place and not have got hurt. That isn't the question if these other matters came up, if the danger was put there and apparent to him, and he was frightened by the negligence of the defendant.' "

The plaintiff in error insists that, after the exception had been noted on the record to the above statement of the court, the court said to the jury to pay no attention to his remarks; that the effect of the statement was to prejudice the rights of the plaintiff in error on the trial of the cause; and further insists that the statement did not touch the law of this case in any respect, because he likened the condition of a man voluntarily working in a dangerous place to a passenger upon a railway train, who, upon paying his fare, assumed on risks whatever, but was entitled to the presumption that he would be carried safely to the end of his journey; and that the jury were misled by this erroneous statement of the trial court, and his subsequent direction to the jury to pay no attention to his remarks was of little effect. The plaintiff in error then discusses specifications of error 3, 4, 5, 6, and 7, and insists that the trial court, in giving those instructions, erroneously instructed the jury on the question of the spragger. These five specifications are as follows:

"If you find by a preponderance of the weight of the testimony that the defendant knowingly employed—and when I say the defendant I mean the manager_or pit boss, I do no

mean one of the fellow servants there that was working with Boyd—but if you find, as I stated, by a preponderance of the weight of the testimony in this case, that the company employed an inexperienced spragman, and you further find that by reason of this employment of the spragman the cars ran away, and you further find that the plaintiff, to escape what he thought was impending danger as a reasonable and prudent person in trying to make his escape, he was injured without fault on the part of the plaintiff, then it will be your duty to find a verdict for the plaintiff in an amount to compensate him for the injury he received and the suffering he received by reason of the injury.

"The court instructs you, gentlemen of the jury, that if the defendant knew that this boy was acting as spragman, if the pit boss, representing the defendant, knew that he was acting as spragman, although he was employed in some other work, but if they permitted him, knowing that he was working as spragman part of the time, then they would be held liable, if you further find he was an incompetent spragman.

"The court instructs you, gentlemen of the jury, further, that if the danger offered to the plaintiff before his injury by cars rushing on him and these cars coming down were caused by the negligence of the defendant as I have instructed you heretofore by reason of the employment of an incompetent spragman, then the plaintiff would not be held and required to take the safest shoot for his safety, but he would only have to exercise care, reasonable care, at the moment of the danger appearing to him; though it appeared afterwards that he had attempted a dangerous way to extricate himself from a situation, he would not be cut off because he took a dangerous route, when without fault on his part his danger came upon him and was caused by the negligence of the defendant employing an incompetent spragman.

"But, gentlemen of the jury, before you can find for the plaintiff in this case, you must find that the defendant knew

that this incompetent man was working as spragman; that is, you must find that he was incompetent, from the testimony. And then you must further find that the defendant knew it, or by the exercise of ordinary diligence would have known it from his working from time to time in that situation.

"That would be the only way that you could find for the plaintiff against the defendant, would be to find from the testimony by a preponderance of the weight of the evidence that the company employed an incompetent man and knew it, or as a reasonable person should have known it, exercising ordinary care would have known his incompetency."

All those five specifications are separate charges on the subject of the defendant employing an inexperienced spragman, and the defendant's negligence by reason of the employment of an incompetent spragman; and that before the jury could find for the plaintiff they must find that the defendant knew that this incompetent man was working as spragman; and they must find that the man was an incompetent man, and the defendant knew it, or by exercising ordinary care would have known of his incompetence.

Plaintiff in error insists that there was absolutely no evidence whatever in this case that an incompetent man acted as spragman. Plaintiff below, defendant in error here, introduced Arthur Jones as a witness, who acted as spragman at the time of the accident in question who testified, among other things, as follows: "Q.  I will ask you if you spragged in the mine No. 4, in March of this year at any day? A.  Yes, sir.  Q.  What day was that?  A.  The day Isaac got hurt. Q.  Did you let a trip of coal cars get away from you that day? A.  No, sir; they didn't get away from me.  Q.  They went down faster than ordinary did they?  A.  No, sir.  Q.  How many trips of coal cars did you sprag that day?  A.  I don't remember.  Q.  Tell the jury how many?  A.  Two or three, I think.  Q.  Did you let any of those two or three get away

from you? A. No, sir. Q. Spragged them all? A. Yes, sir. Q. Checked them so that they went down as they always do? A. Yes, sir. Q. That was the first day you spragged for the Southwestern Development Company? A. No, sir; I spragged before. Q. Occasionally? A. Yes, sir. Q. You are sure that while you were spragging that day that Isaac got hurt that none of these coal cars got away? A. Yes, sir. Q. You are still in the employ of the coal company? A. Yes, sir. Q. They didn't subpoena you here? A. No, sir." On cross-examination: "Q. You say you had spragged for some time past: When did you do your first spragging in that mine? A. I don't remember. Q. Was it a long time or a very short time before the accident? A. Shortly before that. Q. How long, a month? A. No, two or three days. Q. That was the first spragging you had done before? A. No, sir; not the first. Q. When was the first spragging you ever did in there? A. I don't remember. Q. That was a long time before that? A. Yes, sir. Q. Well, your ordinary duties were to remove empties, but you were frequently called on to do spragging? A. Yes, sir. Q. Both by Boyd and Calloway? A. Yes, sir." On redirect examination: "Q. What did you do after you spragged this trip of cars? A. Went to the cage where Isaac was. Q. Where did you find the trip? A. Stopped. Q. Where? A. On the loaded track. Q. Any cars piled up there? A. No, sir."

Defendant in error also introduced Jim Calloway as a witness, who testified, amongst other things, as follows: "Q. How did that trip of cars come down that you didn't sprag (meaning the trip in controversy at the time of the accident to Boyd)? A. They come pretty fast. Q. You don't know whether they was spragged or not, do you? A. They were spragged up pretty well. Q. When did you notice they were spragged pretty well? A. I went back to finish caging them out after we carried Isaac out. Q. Do you know whether they

(meaning the trip of cars in controversy) went into the sump (meaning the bottom of the shaft where the cages landed)? A. No, sir; they didn't go into the sump. Q. Where did they stop? A. About two feet from the sump." On redirect examination: "Q. Did you tell Isaac Boyd that day that you sent this Arthur Jones up there to do that spragging? A. Why he knowed the boy was doing the spragging. I was there. I told Isaac what I was going to do that day. Q. Did you always consult him before directing the men where to go to work? A. I told him then."

Plaintiff in error insist that these two witnesses for defendant in error, as to which there is no contradictory evidence in the record, leaves no controversy upon the proposition that the spragman was not negligent, and made no mistake or error of any kind, and performed the duties of spragman on this particular occasion when Boyd was injured as well as any one could have done; these being the only two witnesses who knew of the situation, and testified that the cars were well spragged, and that this duty was well performed.

It appears from the record that a man by the name of Toliver, and the defendant, Boyd, were cagemen; that Calloway was spragman, and Jones pushing empties; that on the day in question Toliver, one of the cagers, became ill, and with the knowledge of each of the other three men left his work and went out of the mine temporarily, and these three men filled the places of the four, Calloway leaving the spragging and going to assist the defendant in error, Boyd, in caging, and calling on Jones to do the spragging until such time as one of the pit bosses should come along so they could get word to someone to send them an additional man to take Toliver's place. But plaintiff in error insists that there is absolutely no question of incompetency on the part of Jones who had been doing similar work for a long time past, as shown in his testimony above quoted, and that the court erred in giving the five charges with

reference to the inexperience and incompetence of Jones, when there was no proof in the record to show any incompetence whatever on the part of Jones, and that the case should be reversed for giving these erroneous charges.

Under the third head, plaintiff in error discusses the second and eighth specifications of error; the second being: "The court instructs the jury to return a verdict for the defendant." And the eighth that "the trial court erred in overruling plaintiff in error's motion for a new trial."

It appears from the record that the defendant in error was an adult, 33 years old, and had worked as a practical miner from five to seven years prior to this accident, and for five or six months immediately prior to this accident had been working as cager at the bottom of the particular shaft where he was injured at the time in question. That on the day of the accident there were four men engaged in the work of receiving loaded cars from the different portions of the mine putting them upon the cage, or "caging" them, as they called it, and hoisting them out of the mine, and receiving empty cars returned to the mine and distributing them out on the tracks where they were to be carried back in various portions of the mine to be reloaded. That these four persons were defendant in error, Boyd, Hunt, Toliver, Jim Calloway, and Arthur Jones. They were all grown men, except Jones, who was 17 years old. That shortly preceding the accident Boyd and Toliver had been doing the caging at the bottom of the shaft, Calloway had been doing the spragging which was effected by means of small sticks put in between the spokes and felloes of the wheel in such a way as to operate as a brake and slow down the speed of the cars as they approached the bottom of the shaft. Jones had been engaged in pushing empty cars. About noon Toliver became sick and quit work and went out of the mine, and Calloway then took Toliver's place in assisting Boyd in the work of caging, and also took Jones' place in pushing empties away from the bottom of the

shaft.and these three men, Boyd, Calloway, and Jones, voluntarily undertook to do the work ordinarily done by the four men, Boyd, Calloway, Jones, and Toliver, during Toliver's illness, until they could communicate with some official or superintendent of the company who could send another man to take Toliver's place. It was while these three men were thus engaged that the accident to Boyd occurred.

The plaintiff in this action alleged: First, that the defendant was negligent in employing incompetent labor to sprag strips of cars; and, second, in not using and exercising proper care, caution, and skill in bracing, casing, and timbering said shaft, and providing proper means of escape from danger at the place where plaintiff was at work, and in not properly bracing, casing, and timbering the same so as to prevent accident from injury from improperly handling cars laden with coal, and a proper means of escape from danger at and around the place where the plaintiff was at work.

Defendant in error states in his brief that he abandoned the theory of negligent construction, and relied entirely upon the theory of the negligent operation of the mine and specifically charged defendant with negligence in operating and handling its coal cars and increasing his danger by permitting a boy of tender years to catch and sprag trips of coal cars. Plaintiff in error insists that the theory of defendant in error is completely refuted by the testimony of the defendant in error himself, as well as by the testimony of his co-workers and fellow servants, Jim Calloway and Arthur Jones, who show clearly in their testimony, as it appears in the record in this case, that Jones not only was perfectly competent to do the work of spragging, but on this particular occasion did the spragging well; and while, as testified to by defendant in error himself, cars frequently piled up and wrecked at and in this sump at the bottom of the shaft, yet on this particular occasion, and with this particular trip of cars, they did not pile up, and did not wreck, but,

on the contrary, ran into their proper place and stopped within two feet of the bottom of the shaft, where they could be easily placed upon the cage to be taken out from the mine.

Plaintiff in error further insists that Jones was not employed by the plaintiff in error to do the spragging, but he was put in this position in an emergency by the defendant in error, and by Calloway as co-worker and fellow servant of defendant in error, to fill the vacancy which existed by reason of the illness of their fellow servant Toliver, when Calloway, with the knowledge of the defendant in error, directed Jones, also a fellow servant of the defendant in error, to temporarily do this spragging work. This was all done without the knowledge of the plaintiff in error, or of any representative of the plaintiff in error, for these men were waiting to get in communication with the representative of the plaintiff in error to supply them with a new man to take Toliver's place, and the accident occurred in the meanwhile. But under the evidence in this case there can be no complaint of incompetency on the part of Jones as to his spragging, for it is shown by the witnesses for the defendant in error that Jones did his work well on this occasion. In the testimony of William Cameron, who stated that he was United States mine inspector for the Indian Territory, and had on several occasions examined the mine, he testified, amongst other things, as follows: "From your knowledge and experience as a practical operator of mines in this territory, and the experience you have gained by representing the government as mine inspector in this territory for four or five years, will you please kindly state in your examination of this mine near the time of this accident, before that and after, what, if anything you discovered that was not proper in the construction, maintenance, or timbering, or anything ofthat sort, in the vicinity of this accident. A. I think this is properly constructed, both from a practical and from a theoretical view. Q. Is it provided with proper places for the miners to avoid accidents

from a practical and theoretical standpoint? A. Yes, sir." The foregoing was the only testimony in the record in regard to the construction, maintenance, or timbering, or anything of that sort, in the vicinity of this accident, and, as heretofore stated, the defendant in error abandoned the claim for damages by reason of any negligence on that account. On recross-examination, Cameron, United States mine inspector, was questioned as follows: "Q. I understand you to say, if he had attempted to get away from what he believed to be dangerous, that it would have been an unwise thing for him to do. A. The wise thing for him to do would have been to step across that entrance there. Q. You were there three or four days afterward? A. Yes, sir. Q. And you were not menaced by any danger, and you concluded from your judgment at that time what would have been the proper thing to do? A. Yes, sir; I saw what would have been the proper thing to do. Q. But you were not at that time threatened with any danger, were you? A. Oh, no."

The only proposition submitted to the jury by the trial court was on the question of the incompetency and youthfulness of the spragman, and as to this question the court told the jury that the defendant in error must have made out his case of negligence against the plaintiff in error by the preponderance of the testimony. From the record it does not appear that there was a scintilla of evidence in this case to show that the spragman, Arthur Jones, was incompetent in any way; but, on the contrary, the evidence shows that he properly spragged this particular trip of cars in question, and that he was engaged on this work with the knowledge and assent of the defendant in error himself. Plaintiff in error insists that the court, in submitting this single issue to the jury, sought to avoid the responsibility that clearly fell upon him. In Patton vs Railway Co., 179 U. S. 658, 21 Sup. Ct. 276, 45 L. Ed. 361, the court said: "He (the court) is not a mere moderator of a town meeting,

submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility." In Railway Co. vs O'Brien, 132 Fed. 593, 67 C. C. A. 421, the court said, quoting from the case of Wormell vs Railway 79 Me. 397, 10 Atl. 49, 1 Am. St. Rep. 321: "There is no presumption of negligence on the part of the defendant from the fact alone that an accident has happened, or that the plaintiff has received an injury while in the employment of the defendant. The Circuit Court of Appeals, in its own language in this case, says: "It is familiar doctrine that in cases between employe and employer the law does not presume carelessness or negligence on the part of the latter. And the presumption in the case before us is that due care was exercised by the company in respect of the condition of the engine, cars, and railroad track, and also that those in charge of the operation of the train performed their duty. No logical distinction can be made in the application of this presumption of performance of duty between the mechanical condition of the engine and cars, on the one hand, and the operation of the train, upon the other. The burden of proof is upon him who asserts that the employer was negligent. This burden cannot be discharged by mere proof of the occurrence of the accident. To hold otherwise would be to ignore the well-established and long-settled difference between the rules which govern in passenger cases and those which apply when the relation is that of employer and employe." The text-books lay down a similar rule of law. In Sutherland on Damages (volume 1 [2d Ed.] § 3), it is said: "The right to damages constituting a legal cause of action requires the concurrence of two things: That the party claiming them has suffered an injury, and that there is some other person who is legally answerable for having caused it. If one suffers an injury for which no one is liable, it gives no legal claim for damages. It is damnum absque injuria. * * * In

Watson on Damages (section 2), it is said: "Where there has been no violation of a right, the situation is described as damnum absque injuria, in which circumstances a recovery is not permitted, no matter to what extent the plaintiff may have sustained damages. 'One cannot always look to others,' it has been said, to make compensation for injuries received.' Many accidents occur, the consequences of which the sufferer must bear alone.' "

The testimony of the defendant in error himself shows that this unfortunate accident, which afflicted him so severely, was the result of pure thoughtlessness and carelessness on his part, and in no way attributable to any failure of duty or improper act on the part of any one else. In his cross-examination, he testified as follows: "Q. Now you say you had given the signal yourself to the engineer which caused the east cage to go up, and the west cage to come down? A. Yes, sir. Q. And you ran under the west cage when you had signaled them to come down, and knew it was coming down? A. No, sir. Q. You Didn't? A. I had been standing their eight or ten minutes. Q. Well, you hadn't given any other signal to stop it, had you? A. No, sir. Q. Well, you knew the east cage had started up under your signal, hadn't it? A. Yes, sir. Q. Then you knew the other one must be coming down? A. It hadn't never come; I was standing there waiting. Q. But when one goes up the other one comes down? A. Yes, sir. Q. So you knew that while one was coming up the other came down? A. Yes, sir. Q. The fact is that you thought you could get through out onto the south side before the west cage came down? A. Yes, sir; it hadn't never come, and I thought I could cross before it reached the bottom. Q. And you missed your chance, and it caught you before you got up, didn't it? A. Yes, sir. Q. That is a fact, isn't it? A. Yes, sir." As the evidence of Arthur Jones and Calloway, which is uncontradicted in the record by any other evidence, shows that the

spragging of the cars on this occasion was well done, and the testimony of Cameron shows that the mine was properly and safely constructed, with proper places of escape from anticipated accidents, the plaintiff in error insists that the court, under the Patton and O'Brien Cases, which are binding upon this court, should have sustained his motion to direct a verdict for the defendant, and that in consequence the case should be reversed.

Counsel for defendant in error, in rebutting the assignment of error that the verdict was not sustained by sufficient evidence, cites the case of Spring Valley Coal Co. vs Chiaventone, 214 Ill. 314, '73 N. E. 420, and quotes the statement made by the court, in the decision of that cause, that the appellant was guilty of gross negligence in permitting loaded coal cars, as disclosed in that case, to run down an incline by only being spragged. The court said: "There are five counts in the declaration, so counsel say in their brief; but, since the declaration is not abstracted, we take it for granted that the declaration is properly drawn, and will support a verdict upon any theory of the evidence. We are not required to look at the record and see what the declaration says, and no complaint is made of instructions given, or any rulings by the court on the trial, and only one refused instruction is complained of." It appears that on the 21st day of November, 1902, while engaged in pushing a car of rock out on what is called the southwest of the north fifth, he was struck by a car of coal coming down the north fifth and killed. This north fifth was a passageway leading from the coal to the southwest entry, leading to the shaft. The allegations in the declaration not being shown, and the circumstances of the accident occurring somewhere in the mine where loaded coal cars were permitted to run down by themselves, make it an entirely different case from the case at bar, where the only complaint is that an inexperienced and incompetent spragman is alleged to have been the cause of the accident to the defendant in error. The defendant in error cites cases

from the Court of Appeals of the Indian Territory, to the effect that, where the evidence is conflicting, it is the general rule in Appellate Courts not to set aside a verdict. This is undoubtedly a correct statement of the rule in cases where the evidence is conflicting.

The defendant in error cites cases to establish the proposition that the law does not require direct or positive evidence of negligence as a cause of action or as a defense. It may be inferred from circumstances. In Atchison, Topeka & Santa Fe Ry. Co. vs Brassfield, 51 Kan. 167, 32 Pac. 814, the court said: "The jury were not permitted to infer negligence from any circumstances related in evidence, but were in effect limited to such circumstances only as justified a reasonable inference of negligence. The instruction might have been elaborated with profit, but no fuller statement of the law upon the subject was requested, and we cannot say the court committed any error in giving the instruction quoted." In Garrett vs C. & N. W. Ry. Co., 36 Iowa, 122, the court say: "In order to entitle the plaintiff to recover, she must show, among other facts, that the injury complained of resulted from the negligence of the defendant. The burden of proof is upon her, and the mere fact that the fire was caused by the escape of sparks from its engine does not make a prima facie case of negligence. Gandy vs Chicago, etc., Ry. Co., 30 Iowa, 420, 6 Am. Rep. 682. And, as was said in that case, the plaintiff must aver negligence, and, of course, the burden of proof is upon him, and as the mere fact of injury does not in either case prove negligence or other wrong upon the defendant, so it does not in this."

The defendant in error cites many cases to establish the proposition that an accident may itself establish a prima facie case of negligence against a defendant, and cast upon him the burden of proof, to show that such accident occurred without his fault, and states this rule has often been applied in cases of injuries to passengers by railroads or other common carriers.

We are of the opinion that accidents that happen where passsengers have been injured are not applicable to the case at bar, and that the voluminous citation of authorities in regard to accidents to passengers on railroad trains, stage coaches, and steamboats can have no application to the question involved in this case.

Defendant in error cites authorities to establish the proposition that the law so far recognizes the frailty of human nature as to excuse the plaintiff, under the strain of a great and sudden danger, from a temporary lapse of judgment or discretion, which would have been calculated to lead them to pursue the safest possible course open to them under the circumstances. In Mathews vs Daly-West Min. Co., 27 Utah, 193, 75 Pac. 722, where the plaintiff was employed in defendant's mill as a repairman, and was informed by its superintendent that he was going to shut the mill down for half an hour for repairs, as was the custom when repairs were being made, and requested plaintiff to perform that duty, plaintiff began working, and leaned over a belt to tighten a cap, when the superintendent gave the order to start the mill, without the customary warning, and plaintiff was injured. The court said: "It is also well settled that the negligence of the master is not among the risks so assumed by the servant. Therefore when the servant, in the discharge of his duties, is in a position which is, under the conditions which then exist, naturally safe, but is suddenly made dangerous by the negligence of the master, and injury to the servant is immediately caused thereby, the master is liable." It will be readily observed that the statement in the case just cited has no application to the facts in the case at bar, as in the case at bar no order was given by the plaintiff in error, or by its superintendent, foreman, or other agent or agents of the plaintiff in error. In Stokes vs Saltonstall, 38 U. S. 181, 10 L. Ed. 115, the court said: "The third instruction also announces a principle, which we think stands supported by the soundest reason, and we should therefore adopt it as being

correct, if it were altogether a new question. But this, too, is in accordance with the doctrine of Lord Ellenborough, in which he says, that, to enable the plaintiff to sustain the action, it is not necessary that he should have been thrown off the coach. It is sufficient if he were placed, by the misconduct of the defendant, in such a situation as obliged him to adopt the alternative of a dangerous leap, or to remain, at certain peril. If that position was occasioned by the fault of the defendant, the action may be supported. On the other hand, if the plaintiff's act resulted from a rash apprehension of danger, which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover." In 3 Cyc. p. 351, it is said: "A judgment based on a verdict which is altogether unsupported by evidence, or against the uncontradicted evidence and every legitimate inference deducible therefrom, will be reversed. *     *     * As also where the Appellate Court is confined to a review of questions of law, the findings of fact by the verdict are conclusive, unless entirely unsupported, and the objection is thus properly raised as to the question of law. *     *     * And where the verdict is manifestly against the evidence, the judgment will be reversed, notwithstanding the trial court had refused to set aside the verdict." In Railway Co. vs Murray, 55 Ark. 248, 18 S. W. 50, 16 L. R. A. 787, 29 Am. St. Rep. 32, the court said: "In order to render the railroad company liable for injuries received in an effort to escape an apprehended danger, there must have been a reasonable cause of alarm occasioned by the negligence or misconduct of the company. If the effort of the passenger to escape resulted from a rash apprehension of danger which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover." In Johnson vs Jones, 16 Colo. 138, 26 Pac. 584, from the Supreme Court of Colorado, it is said: "*     *     * That the court will never interfere with the verdict of a jury unless:

'Upon the whole record, it appears that the jury acted so unreasonably in weighing testimony as to suggest a strong presumption that their minds were swayed by passion or prejudice, or that they were governed by some motive other than that of awarding impartial justice to the contending parties.' "

The defendant in error states in his brief that the plaintiff in error attempts to show that Arthur Jones was a competent laborer, and says his age could not be more than 12 years, although he testified he was 17 years of age. In Molaske vs Ohio Coal Co., 86 Wis. 220, 56 N. W. 475, in speaking of the rule in regard to the immaturity of children, the court says: "The rule recognizes the immaturity of children of such tender years, their lack of judgment and will and concentration of purpose, the existence of which conditions all experience has proved, and fixes the age when the presumption of capacity arises at 14 years. In analogy to that rule, and having due regard to what we deem most persuasive considerations of public policy, we hold that on the proofs in this case the presumption of law is that the boy employed by the coal company to give the signals was incompetent for that duty, and that the company employed him at its peril of being able to prove, if sued for injuries resulting from his negligence, that he was in fact competent. We hold further that the defendant has not proved conclusively the competency of the boy, and hence that the verdict finding him incompetent cannot be disturbed." In Grand Trunk Railway Company vs Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, the court said: "It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

Defendant in error cites the case of Kaminski vs Tudor Iron Works, 167 Mo. 462, 67 S. W. 221, to establish the proposition that the defense of contributory negligence interposed by the defendant is in the nature of a plea of confession and avoid-

ance, and it has been held for that reason by this court it must be specially pleaded by the defendant to be available to him. But the court say: "* * * The averment of an answer that another or others than defendant did the act which defendant is charged with having done, to the injury of a plaintiff, is nothing more than a denial of the averments of the petition that defendant is guilty of the charges made as the basis of plaintiff's cause of action, and the rule has ever been that anything may be shown under a general denial which tends to prove that the cause of action stated never existed." In 2 Labatt's Master & Servant, p. 1304, it is said: "A master is not bound to indemnify one servant for injuries caused by the negligence of another servant in the same common employment as himself, unless the negligent servant was the master's representative. With respect to servants in a common employ, the master cannot be made answerable for an injury caused to one servant by the negligence of another. Vose vs Lancashire & Y. R. Co., 2 Hurlst. & N. 728, 4 Jur. N. S. 364, 27 L. J. Exch. N. S. 249. 'Where several persons are employed in the same general service, and one is injured from the carelessness of another, the employer is not responsible.' Ryan vs Cumberland Valley R. Co., 23 Pa. 384. 'An employer is not liable to one of his agents or servants for the negligence of another of his agents or servants engaged in the same general business.' Coon vs Syracuse & U. R. Co., 5 N. Y. 492; Id., 6 Barb. 231. A master 'is not liable to one agent or servant for an injury resulting from the negligence or misconduct of another agent or servant while engaged in a common business with him, but without any superior authority or control over him.' Mad River & L. E. R. Co. vs Barber, 5 Ohio St. 541, 67 Am. Dec. 312. 'The master is not liable to a servant for injuries resulting from the negligence of a fellow servant engaged in the same general line of duty, where the negligent act is performed in the capacity of servant.' Indiana Car Co. vs Parker, 100 Ind. 181. 'The employer is not

liable for injuries suffered by one employe, solely through the carelessness or negligence of another employe of the same master, engaged in the same general business.' Columbus & I. C. R. Co. vs Arnold, 31 Ind. 174, 99 Am. Dec. 615. The employer is liable to the servant for negligence of a fellow servant only when the employer's own negligence 'contributes to the injury, or when the other servant occupies such a relation to the injured party, or to his employment, in the course of which his injury was received, as to make the negligence of such servant the negligence of the employer.' Quebec S. S. Co. vs Merchant, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656." In Bailey on Master's Liability for Injuries to Servant, p. 493, the theory of the Supreme Court of the United States is stated in regard to the direction of a verdict: "It is the settled law of this court that when the evidence given at the trial, with all inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

We have endeavored to examine as many of the cases cited by the defendant in error as we could secure, and from none of them do we find any rule or principle of law that will enable us to draw a conclusion that any negligence had been established by the proof in this case, nor are there any inferences that can be drawn from the proof that would bind the defendant. This was an exceedingly unfortunate accident to the defendant in error, but, under the law, can the plaintiff in error be held liable for damages, where there is not a scintilla of evidence that it, or any of its representatives, were responsible for the conditions existing at the time this accident occurred? It was in evidence that Calloway, the fellow servant of the defendant in error, said: "Look out:" And it is supposed he was referring to the trip of coal cars coming down that were being spragged

by Arthur Jones.    But it is conclusively shown that the trip of coal cars was properly spragged, and that no accident could have resulted to the defendant in error had he remained at the place he occupied.    We know of no rule of law that will hold the plaintiff in error responsible simply from the action of a fellow servant of defendant in error, in giving warning of supposed impending danger, when as a matter of fact there was no danger.    In our judgment, under the proof in this case, as shown by the record, the court should have directed a verdict for the defendant.

The case is therefore reversed and remanded.

GILL, C. J., and LAWRENCE and CLAYTON, JJ., concur.