SYLVESTER S. WORMELL

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Kennebec. Opinion June 4, 1887.

*Railroads. Negligence. Due care. Master and servant. New trial.*

Though an employee, at the time of receiving an injury, is in the performance of duties outside of his regular employment (here, a workman in the car shops was in the yard shackling cars, by direction of the foreman,) he cannot recover from the employer the damages sustained, if a want of due care on his own part contributed to produce the injury.

The law requires the exercise of ordinary and reasonable care on the part of each — the master in providing and maintaining suitable means and instrumentalities with which to conduct the business in which the servant is engaged; and the servant in providing for his own safety from such dangers as are known to him or discoverable by the exercise of ordinary care on his own part.

The question of care is one of fact for the jury, ordinarily; but it is for the court to determine whether there is sufficient evidence of due care on the part of the plaintiff to sustain a verdict in his favor. Evidence so slight as not to have legal weight is insufficient.

Facts stated in the opinion which were held insufficient to show due care.

ON motion to set aside the verdict and exceptions from superior court.

The verdict was for four thousand dollars.
The facts are fully stated in the opinion.

*Walton and Walton,* for plaintiff.

The evidence relating to the custom of sending men out of the shop to do work, elsewhere, was properly admitted. Woods' Railway Law, Vol. 3, page 1488 ; *Ohio & Mississippi Ry. Co.* v.

*Collarn,* 73 Ind. 261 ; *Pennsylvania Co.* v. *Stoelke,* 104 Ill. 201.
Whether the plaintiff should have done as ordered was a question
of fact for the jury, as stated in the charge. *Patterson* v. *P. &
C. Ry. Co.* 76 Penn. St. 389 ; Woods on Master and Servant,
p. 760.

There is no question that the drawbar in the case at bar was
not in proper condition, because the buffer did hit the deadwood
and crushed plaintiff's arm against it. The defendants are liable
if this was the case, as their agent Philbrick, whose duty it was
to provide and repair the machinery, could have known by
reasonable diligence the fact of its improper condition. *Shanny*
v. *Androscoggin Mills,* 66 Maine, 420 ; *Gilman* v. *Eastern R.
R. Co.* 13 Allen, 433 ; *Ford* v. *Fitchburg R. R. Co.* 110
Mass. 240 ; *Holden* v. *Fitchburg, R. R. Co.* 129 Mass. 268 ;
*Warden* v. *Old Colony R. R. Co.* 137 Mass. 204 ; *Gormley*
v. *Vulcan Iron Works,* 61 Mo. 492 ; *Dowling* v. *Allen,* 74 Mo.
13 ; *Brobbets* v. *Chicago Ry. Co.* 38 Wis. 289 ; *Strahlendorf*
v. *Rosenthral,* 30 Wis. 674 ; *Dobbin* v. *Richmond Ry. Co.* 81
N. C. 446 ; *Corcoran* v. *Holbrook,* 59 N. Y. 517 ; *Sheehan* v.
*N. Y. Cent. Ry. Co.* 91 N. Y. 332 ; *Mitchell* v. *Robinson,* 80
Ind. 281.

While the plaintiff's attention was intent upon his right hand,
with which he was guiding the shackle, is it any wonder that his
left hand was not held safely, was brought forward and caught by
the buffer and crushed? *Snow* v. *Housatonic R. R. Co.* 8 Allen,
441. Is he to blame that he did not know which way to face?
*Hackett* v. *Middlesex Man. Co.* 101 Mass. 101 ; *Plummer* v.
*Railroad,* 73 Maine, 591.

He was not in fault in obeying orders and relying upon
Philbrick's direction. Negligence should not be attributed to
him therefor. *Howard Oil Co.* v. *Farmer,* 56 Texas, 301 ;
*Connolly* v. *Poillon,* 41 Barb. 366 ; *Keegan* v. *Kavanaugh,* 62
Mo. 230 ; *Luelka* v. *Chic. Mil. & St. P. Ry. Co.* 59 Wis.
127 ; Woods on Master and Servant, pp. 720 to 733, 760.
Thom. on Neg. Vol. 2, p. 974, 971.

The jury were justified in finding that Mr. Wormell, was not
in fault but there was negligence on the part of Philbrick in

sending plaintiff out to do the shackling without informing him of the peril to which he would thereby be exposed, irrespective of the question of the suitableness of the coupling, drawbar and buffer attachment. Whart. Neg. § § 216 to 220. *O'Connor* v. *Adams,* 120 Mass. 427 ; *Parkhurst* v. *Johnson,* 50 Mich. 70 ; *Keegan* v. *Kavanaugh,* 62 Mo. 230 ; *Dowling* v. *Allen,* 74 Mo. 13 ; *Hill* v. *Gust,* 55 Ind. 45 ; *Howard Oil Co.* v. *Farmer,* 56 Tex. 301 ; *Lalor* v. *C. B. & Q. Ry. Co.* 52 Ill. 401 ; Woods Ry. Law, Vol. 3, p. 1487 ; Woods, Master & Servant, p. 723, § 354.

It is only where the servant with full notice of the risk he assumes, chooses to enter the employment, that the master is relieved from liability. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572 ; Rorer on Railroads, Vol. 2, p. 836 ; Woods, Master and Servant, 17, § 353.

So far as the case considered as a whole is concerned, it was one manifestly for the jury particularly when the jury had an opportunity to examine an engine and car for themselves. *Brown* v. *Moran,* 42 Maine, 44 ; *Lawless* v. *Conn. River R. R. Co.* 136 Mass. 1 ; *Arkerson* v. *Dennison,* 117 Mass. 407 ; *Avilla* v. *Nash,* 117 Mass. 318 ; *Huddleston* v. *Lowell Machine Shop,* 106 Mass. 282 ; *Meesel* v. *Lynn & Boston R. R. Co.* 8 Allen, 234 ; *Snow* v. *Housatonic R. R. Co.* 8 Allen, 441 ; *Reed* v. *Deerfield,* 8. Allen, 522 ; *Bigelow* v. *Rutland,* 4 Cush. 247 ; *Plummer* v. *R. R. Co.* 73 Maine, 594 ; *Spofford* v. *Harlow,* 3 Allen, 176 ; *Quirk* v. *Holt,* 99 Mass. 164 ; *Gaynor* v. *Old Colony & N. Ry. Co.* 100 Mass. 208 ; *Shapleigh* v. *Wyman,* 134 Mass. 118 ; *Tyler* v. *N. Y. & N. E. Ry. Co.* 137 Mass. 238 ; *Johnson* v. *Bruner,* 61 Penn. St. 58 ; *Penn. R. R. Co.* v. *Ogier,* 35 Penn. St. 60 ; *Fay* v. *Minn. & St. La. Ry. Co.* 30 Minn. 231 ; *Sheehy* v. *Burger,* 62 N. Y. 558 ; *McIntire* v. *N. Y. Cen. Ry. Co.* 37 N. Y. 287 ; *Hawley* v. *Same,* 82 N. Y. 370 ; *Hanley* v. *N. Y. Cen. Ry Co.* 17 Hun, 115 ; *Marsh* v. *Chickering,* 25 Hun, 405 ; *Howard Oil Co.* v. *Farmer,* 56 Tex. 301 ; *Snoboda* v. *Ward,* 40 Mich. 420 ; *Hill* v. *Gust,* 55 Ind. 45 ; and the other cases before cited in this argument.

*F. A Waldron,* also for plaintiff.

In *Lawless* v. *Conn. River R. R. Co.* 136 Mass. 1, the court

says : "It is the duty of the defendant to furnish a locomotive engine suitable for the work which it required the plaintiff to perform with it, and to exercise ordinary care in the performance of this duty and it was responsible to the plaintiff if he was using due care for an injury resulting from its negligence or want of ordinary care in this respect." 110 Mass. 240 ; 129 Mass. 268 ; 100 U. S. 213 ; 139 Mass. 584.

The decided cases adopt this rule. "It is the duty of a master to notify his servant of peculiar dangers which are not known or obvious to them, but known to the defendant, its officers or agents. And the notice and instructions must be adapted to the immaturity and inexperience of the servant." 102 Mass. 572 ; 120 Mass. 427 ; 29 Conn. 548 ; 30 Wis. 674 ; 31 Ohio, 479 ; 37 Mich. 205 ; 25 Ala. 659 ; 21 Hun, 396 ; Prince on Master and Servant, 376.

If it be said that a man in the exercise of ordinary care could have avoided the danger to which he was exposed, we answer in the language of the court in *Hawks* v. *Locke*, 139 Mass. 209. "We are to regard (consider) not only that which may prove to have been necessary upon a review of the situation in cool blood but what would naturally seem so in the hurry and excitement of the moment when the parties had to act."

In *O'Conner* v. *Adams*, 120 Mass. 427, the evidence showed that defendant's agent ordered the plaintiff to work in a place of peculiar danger of which he had no knowledge or experience without informing him of the risks or instructing him how to avoid the danger. And the court held the defendant responsible for the injury sustained by the plaintiff.

In *Lalor* v. *C. B. & Q. R. R. Co.* 52 Ill. 401, a laborer employed in loading and unloading freight cars was ordered to couple cars by defendant's superintendent who knew him to be inexperienced and unacquainted with the manner of doing such work when he ordered him to do it. The laborer did not appreciate the danger to which he was exposed and the court held the defendant responsible in damages for the injury sustained.

The standard is different in each case and as the facts and circumstances are developed at the trial it cannot be determined

by the court but must be submitted to the determination of the jury. This position is supported by an unbroken line of authorities of which I will cite a few. 4 Cush. 247; 10 Allen, 159; 6 Allen, 87; 12 Allen, 58; 8 Allen, 234, 522; 32 Vt. 612; 28 Conn. 264; 101 Mass. 101; 102 Mass. 572; 11 Allen, 419; 136 Mass. 1; Eastern Rep. Vol. 4, No. 11, p. 871.

*Baker, Baker and Cornish,* for the defendant.

If the duty commanded is glaringly perilous then the servant who attempts is guilty of contributory negligence. *Lalor* v. *Railroad,* 52 Ill. 401 (4 Am. R. 616); *Railroad* v. *Bayfield,* 37 Mich. 205; *Railroad* v. *Adams,* 5 No. East. Rep. 600; *Jones* v. *Railroad,* 49 Mich. 573; *Smith* v. *Car Works,* 27 N. W. Rep. 662; *Railroad* v. *Fort,* 17 Wall. 553; *Miller* v. *U. P. R. R.* 12 Fed. Rep. 600; *Same* v. *Same,* 17 Fed. Rep. 67; *Thompson* v. *Railroad,* 14 Fed. Rep. 564; *Crew* v. *Railroad,* 20 Fed. Rep. 93; *English* v. *Railroad,* 24 Fed. Rep. 906.

His employer could not require it, if not within the scope of his contract. *Wallace* v. *DeYoung,* 98 Ill. 638 (38 Am. R. 109); *Cassidy* v. *Railroad,* 76 Maine, 489; *Griffiths* v. *London, &c. Dock Co.* 12 Q. B. Div. 495; S. C. 13 Q. B. Div. 259; *Nason* v. *West,* 3 Atl. Rep. 911; *Leary* v. *B. & A. R. R.* 139 Mass. 580.

Master is not bound to notify the servant of obvious danger. *Coolbroth* v. *M. C. R. R.* 77 Maine, 165; Wood, Master and Serv. § 326; *Woodley* v. *Railway Co.* 21 Moak's Eng. Rep. 519, note; *Gibson* v. *Railroad,* 46 Mo. 163; Beach, Con. Neg. § 138; *Wheeler* v. *Wason M'fg Co.* 135 Mass. 296; *Hathaway* v. *Mich. Cen. R. R.* 51 Mich. 253 (47 Am. R. 569); *Railroad* v. *Smithson,* 45 Mich. 212; *Cummings* v. *Rollins,* 61 Mo. 523.

FOSTER, J. The plaintiff was at work as a locomotive machinist in the car shops of the defendant corporation at Waterville. On the day the injury was received he was directed by the foreman of the car shops to go out with an engineer and

move an engine from the paint shop near by to the repair shop where the plaintiff worked. The engine with which the moving was to be done was then standing on the turn-table in the machine shop. In order to move the engine from the paint shop to the repair shop it became necessary first to remove certain cars which were on the track in the yard. The plaintiff went out, and while waiting for the switches to be turned, Philbrick, the master mechanic of the road, came out and asked him if he knew how to shackle the passenger car that stood upon the paint shop tracks, and the plaintiff replied that he did not know how to shackle any cars. Thereupon the master mechanic took him to the car and explained the peculiar danger that might arise from the shackling of a passenger car, no special instructions being given in relation to shackling flat cars, but told him he must not get in line of the drawbars, and finally told him that he guessed he could get along by being careful. The flat cars stood next to the engine and had to be coupled first. In attempting to couple the tender to the first flat car he made several efforts, but failed, as he claimed, because the shackles were too short. Finally, when the engine and tender backed the third time, standing as he had stood before between the tender and the flat car, with the tender on his right and the flat car on his left, while adjusting the shackle with his right hand, he allowed the wrist of his left hand to rest over the edge of the deadwood of the flat car directly over its drawbar, and directly in front of the buffer upon the tender, which is a projecting arm out of which the shackle extends, and failing to connect the shackle with the drawbar of the car, the buffer came back against and crushed his left hand, necessitating its amputation.

The plaintiff bases a recovery against the defendant corporation upon two grounds — that the implements and means furnished were not proper and suitable for the work which the plaintiff was directed to do,— and that Philbrick, representing the corporation as a vice-principal, placed him in a position of peculiar peril without notifying him of the danger.

The latter position is the one most strenuously urged and relied on by the plaintiff who recovered a verdict against the

defendant, and the case is now before this court on motion to set aside the verdict, and also on exceptions.

With the view which the court has taken of the case, it does not become necessary to determine in what capacity Philbrick was acting, whether as vice-principal or as a fellow-servant with the plaintiff, inasmuch as it is the opinion of the court that the verdict cannot be upheld upon other grounds.

The action set forth is founded upon the charge of negligence. It is the gist of the action. To entitle the plaintiff to recover, he must prove such negligence, the omission of some duty, or the commission of such negligent acts on the part of the defendant. as occasioned the injury to the plaintiff.

If the injury was occasioned through his own neglect and want of ordinary care, or was the result of accident solely, the defendant being without fault, the action is not maintainable. "The negligence is the gist of the action, but the absence of negligence contributing to the injury, on the part of the plaintiff, is equally important." *Brown* v. *E. & N. A. Railway Co.* 58. Maine, 387 ; *Osborne* v. *Knox & Lin. Railroad*, 68 Maine, 51.

There is no presumption of negligence on the part of the defendant from the fact alone that an accident has happened, or that the plaintiff has received an injury while in the employment. of the defendant. In the long line of decisions both in this country and in England from *Priestley* v. *Fowler*, 3 Mees. & Wels. 1, to the present time, it has been held that the mere fact. of the relationship of master to servant, without a neglect of duty, does not impose upon the master, a guarantee of the servant's safety but that the servant of sufficient age and. intelligence to understand the nature of the risks to which he is. exposed, engaging for compensation in the employment of the master, takes upon himself the natural, ordinary and apparent. risks and perils incident to such employment. *Coolbroth* v. *Maine Central R. R. Co.* 77 Maine, 167 ; *Nason* v. *West*, 78 Maine, 257.

The relationship of master and servant may and most frequently does exist by simple mutual agreement that the servant is to labor in the service of the master. In such case the

law holds that the terms of the contract are not fully expressed, and that there exists by implication reciprocal rights and obligations on the part of each which it will protect and enforce equally as if expressed by the parties.   Among other things it implies that each is to exercise ordinary and reasonable care.   It implies that the master is to use ordinary care in providing and maintaining suitable means and instrumentalities with which to conduct the business in which the servant is engaged, so that the servant, being himself in the exercise of due care, may be enabled to perform his duty without exposure to dangers not falling within the obvious scope of his employment.   The implied duty of the master in this respect is measured by the standard of ordinary care.   *Hull* v. *Hall*, 78 Maine, 117.   The law holds him to no higher obligation than this.

Nor is the employer bound to furnish the safest machinery, instrumentalities or appliances with which to carry on his business, nor to provide the best methods for their operation, in order to save himself from responsibility resulting from their use.   If they are of an ordinary character and such as can with reasonable care be used without danger, except such as may be reasonably incident to the business, it is all that the law requires.   *Railroad Co.* v. *Sentmeyer*, 92 Penn. St. 276.

Thus it has been held that where an injury happens to a servant while using an instrument, an engine or a machine in the course of his employment, the nature of which he is as much aware as his master, and in the use of which he receives an injury, he cannot, at all events if the evidence is consistent with his own negligence in the use of it as the cause of the injury, recover against his master, there being no evidence that the injury arose through the personal negligence of the master; and that it was no evidence of such personal negligence of the master, that he had in use in his business an engine or machine less safe than some other in general use.   *Dynen* v. *Leach*, 26 L. J. (N. S.) Exch. 221.

And in accordance with the same principle it was held in *Indianapolis B. & W. Railway* v. *Flanigan*, 77 Ill. 365, that a railroad company was not liable for an injury received by an

employee, while coupling cars having double buffers, simply because a higher degree of care is required in using them than in those differently constructed.

So in *Fort Wayne, &c. Railroad* v. *Gildersleeve*, 33 Mich. 133, it was decided that a railroad company which used in one of its trains an old mail car which was lower than others, was not liable to its servant, who knowingly incurred the risk, for an injury resulting from the coupling of such old car with another, though the danger was greater than with cars of equal height.

Every employer has the right to judge for himself in what manner he will carry on his business, as between himself and those whom he employs, and the servant having knowledge of the circumstances, must judge for himself whether he will enter his service, or, having entered, whether he will remain. *Hayden* v. *Smithville*, 29 Conn. 548; *Buzzell* v. *Laconia M'f'g* Co. 48 Maine, 121; *Shanny* v. *Androscoggin Mills*, 66 Maine, 427; *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 585; *Ladd* v. *New Bedford R. R. Co.* 119 Mass. 413.

Moreover, the law implies that where there are special risks in an employment of which the servant is not cognizant, or which are not patent in the work, it is the duty of the master to notify him of such risks; and on failure of such notice, if the servant, being in the exercise of due care himself, receives injury by exposure to such risks, he is entitled to recover from the master whenever the master knew or ought to have known of such risks. It is unquestionably the duty of the master to communicate a danger of which he has knowledge and the servant has not. But there are corresponding duties on the part of the servant; and it is held that the master is not liable to a servant who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom. *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 82; *Ladd* v. *New Bedford R. R. Co. supra*; *Priestley* v. *Fowler, supra*. It is his duty to use ordinary care to avoid injuries to himself. He is under as great obligation to. provide for his own safety, from such dangers as are known to.

him, or discoverable by the exercise of ordinary care on his part, as the master is to provide it for him. He may by the want of ordinary care so contribute to an injury sustained by himself as to destroy any right of action that might under other circumstances be available to him.

These rules are elementary and fundamental, and are everywhere recognized. They grow out of the necessities of the relation of master and servant, and are founded and sustained by public policy. Though dressed in language differing somewhat in style of expression, it will be found that the decisions generally are in accord with the principles herein expressed. One writer has thus summed up the doctrine in the following language : "As we have seen it to be the duty of the master to point out such dangers as are not patent, so it is the duty of the employee to go about his work with his eyes open. He cannot wait to be told, but must act affirmatively. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work when there is danger. He must inform himself. This is the law everywhere." Beach, Contrib. Neg. § 138. *Russel* v. *Tillotson,* 140 Mass. 201.

In speaking of the respective duties and obligations between master and servant in reference to dangers which are concealed and those which are obvious, the court, in *Cummings* v. *Collins,* 61 Mo. 523, say : "The defendants are not liable for any injury resulting from causes open to the observation of the plaintiff, and which it required no special skill or training to foresee were likely to occasion him harm, although he was at the time engaged in the performance of a service which he had not contracted to render."

Upon a careful examination of the evidence in the case under consideration, we are satisfied that the verdict cannot stand. There is not sufficient evidence upon which a jury could properly found a verdict that the plaintiff himself was in the exercise of due care at the time he received his injury. This is an affirmative proposition which, in this state and many of the others, it is incumbent on the plaintiff to make out by proof before he could be entitled to recover. *Dickey* v. *Maine Telegraph Co.* 43 Maine,

492; *Lesan* v. *M. C. R. Co.* 77 Maine, 87; *State* v. *Same*, 77 Maine, 541; *Crafts* v. *Boston*, 109 Mass. 521; *Taylor* v. *Carew M'f'g Co.* 140 Mass. 151. Nor will this proposition be sustained where the evidence in reference to it is too slight to be considered and acted on by a jury. It must be evidence having some legal weight. Such is the general doctrine of the decisions. A mere *scintilla* of evidence is not sufficient. *Connor* v. *Giles*, 76 Maine, 134; *Riley* v. *Connecticut River Railroad*, 135 Mass. 292; *Corcoran* v. *Boston & Albany Railroad*, 133 Mass. 509; *Nason* v. *West*, 78 Maine, 256, and cases there cited: *Cornman* v. *Eastern Counties Railway Co.* 4 Hurl. & Nor. 784.

It is not denied, as contended for by the learned counsel for the plaintiff, that the question of due care is ordinarily one of fact for the jury. But the question oftentimes becomes one of law whether there are such facts or circumstances upon which the jury can properly base their determination in favor of such care. If not, it is within the province of the court, in the due administration of justice according to well settled legal principles, to revise their findings.

And in this case the evidence uncontradicted from the plaintiff himself as to the manner of the accident is conclusive against the verdict upon this point. Not only do the facts as detailed by him, and about which there appears to be no controversy, fail to show the exercise of due care, but rather that degree of carelessness and neglect on his part which must be held to have very largely if not wholly contributed to the injury complained of. He was a man forty-five years of age, and had been for many years familiar with engines of all constructions; had been a locomotive machinist for twelve years, repairing them constantly, and six years in the employ of the defendant corporation. For five years prior to the accident engines with buffers had been in common use upon the road, and he had worked on every pattern of engine that came into the shops where he was employed. He testifies that the engine with which he was injured came that morning from the repair shop where he was working, and that it might have been there four or five weeks, and he might have worked on it. He had received a general warning from Philbrick

to be careful, and was specially warned of the danger in reference to shackling passenger cars. It also appears from the testimony that he stood there watching the clearing of the tracks from fifteen to thirty minutes. He had full leisure to examine and inform himself of all the common dangers incident to shackling. It appears that he attempted three times to do the shackling, and the third time he received his injury. The first time he stood with the engine backing down upon his right, himself facing the engine and shackling apparatus on its rear, of which the buffer was the most prominent part. The shackle itself which he took hold of projected from the buffer, and he could not see one without seeing the other. Every thing was in plain sight. It was in broad day light. At the first attempt he failed to connect the shackle with the drawbar. Consequently the tender brought up against the deadwood of the car on his left. As the shackle did not connect, the contact between the tender and the flat car could only have been caused by the buffer striking against the deadwood of the car precisely in the spot where he afterwards placed his left hand and received his injury. He then tried a new shackle, repeating the same process. The second time the shackle failed to connect, and the engine and car came together again in precisely the same manner as at first — the buffer again striking the car at the very point where afterwards he placed his hand. After these two attempts, immediately under his eye, he tried a third shackle, and the engine a third time backed down towards him, again giving him full opportunity for observation — he facing the buffer as before and necessarily looking right into the shackling apparatus of which the buffer was a part, and this time hung his left wrist over the front edge of the center of the deadwood, directly in front of the approaching buffer, in precisely the same place where the buffer had just struck the deadwood twice before. It was, as the evidence shows, the only place upon the car where he could not have placed his hand with perfect safety. Placing it where he did the injury was inevitable. It required no special skill or training to know that such an act would necessarily result in injury. This was not an extraordinary or concealed danger which required to be specially pointed out

to a person of mature years and ordinary intelligence. He had been employed, as he himself testifies, for twelve years solely in work about and upon all manner of engines and cars including engines with buffers precisely as this one was equipped. No man needs a printed placard to announce a yawning abyss when he stands before it in broad day light. *Yeaton* v. *Boston & Lowell Railroad*, 135 Mass. 418 ; *Coolbroth* v. *Maine Central Railroad Co.* 77 Maine 165 ; *Railroad Co.* v. *Keenan*, 103 Penn. St. 124 ; *Osborne* v. *Knox & Lincoln Railroad*, 68 Maine, 51.

And it was held in *Wheeler* v. *Wason M'f'g Co.* 135 Mass. 298, that where the servant is as well acquainted as the master with the dangerous nature of the machinery or instrument used, or of the service in which he is engaged, he cannot recover. Beach, Cont. Neg. § 140.

Very similar were the facts in the case of *Hathaway* v. *Railroad*, 51 Mich. 253 (47 Am. Rep. 569), to these in the case before us. There, the plaintiff, an inexperienced brakeman, was called upon by the conductor in the night time to couple two cars of the Erie road which were made specially dangerous by having double deadwoods which the plaintiff had never seen before. In that case, as in the present, one of the real grounds set up by the plaintiff, was that he had not been sufficiently instructed in what was required of him by the company to enable him to discover and appreciate the danger, and that some notice thereof should have been given him by the company other than the general one which he received. The court say : "The plaintiff had the full opportunity of examining the one by which he stood some moments before the cars came together ; its size, shape and the location of the drawbar were before him. He had only to look at it to be informed of any perils surrounding it. The moving car at a distance of twenty feet with its deadwood and drawbar in plain view slowly approached the one where the plaintiff was standing. It does not appear that there was any hurry about the business. How could the plaintiff have been better warned? He could see the deadwoods and drawbar thereon as well as if he had made the coupling of them a thousand

times before. He could not fail to see if he looked at all." See also *Taylor* v. *Carew M'f'g Co.* 140 Mass. 151.

If the plaintiff, as is contended, was at the time of this unfortunate occurrence, in the performance of duties outside of his regular employment, he will nevertheless be held to have assumed the risks incident to those duties. This principle is settled by numerous decisions. *Woodley* v. *Metropolitan District Railway Co.* 2 Exch. Div. 389 ; *Railroad* v. *Fort,* 17 Wall. 553 ; *Rummill* v. *Dillworth,* 111 Penn. St. 343 ; *Buzzell* v. *Laconia M'f'g Co.* 48 Maine, 121 ; *Hayden* v. *Smithville,* 29 Conn. 548 ; *Wright* v. *N. Y. Central Railroad* 25 N. Y. 570 ; *Leary* v. *Boston & Albany Railroad,* 139 Mass. 587.

In the last case cited where the question is fully discussed, the court say : " Where one has assumed an employment, if an additional or more dangerous duty is added to his original labor, he may accept or refuse it. If he has an existing contract for the original service, he may refuse the additional and more dangerous service ; and, if for that reason he is discharged, he may avail himself of his remedy on his contract. If he has no such contract, and knowingly, although unwillingly, accepts the additional and more dangerous employment, he accepts its incidental risks ; and, while he may require the employer to perform his duty, he cannot recover for an injury which occurs only from his own inexperience."

From the disposition of the case already made, it becomes unnecessary to consider the defendant's exceptions. The law pertaining to the case in order to cover it fully at the time of the trial was necessarily somewhat complicated ; and it is very questionable whether the numerous abstract propositions appearing in the charge, and following each other in quick succession, could be readily comprehended by a jury unaccustomed to grapple with abstruse and intricate legal propositions. While the charge may have been correct in the abstract, we are of the opinion that several of the defendant's requested instructions were proper to a full understanding of the principles involved, and their application to the questions at issue, and should have been given.

As the case is disposed of however, on other grounds, nothing further need be said in relation to the exceptions.

*Motion sustained. New trial granted.*

PETERS, C. J., DANFORTH, VIRGIN, LIBBEY and HASKELL, JJ., concurred.