BERNARD J. MCCAFFERTY *vs*. MAINE CENTRAL RAILROAD COMPANY.

Cumberland.    Opinion December 15, 1909.

*Master and Servant.   Negligence.   Fellow Servant.   Rules.   Assumption of Risk.
Contributory Negligence.*

The plaintiff, a competent and experienced steam fitter and piper, and
thoroughly familiar with all his surroundings, was engaged in fitting a pipe
in the defendant's machine shop.   He was left to do the work in his own
way.   In doing so, he had ascended a ladder to the track of an electric
movable crane, over twenty feet from the ground.   While working he lay
with his body partly on or over the rail.   The operator of the crane knew
of the work in which the plaintiff was engaged, and that it required him to
go up onto the rail.   But at the time in question he did not notice that
the plaintiff was then at work at that place, and in moving the crane to
accommodate other work in the shop, run it onto the plaintiff and caused
the injury.   The plaintiff did not hear the approaching crane or have notice
of it.   Neither the plaintiff nor the defendant company gave notice to the
crane operator that the plaintiff was then going up onto the rail.   There
was no bell or other device on the crane to give warning of its approach.
Nor had the defendant company promulgated rules for its operation.   There
was no occasion for any employee to go up onto the rail in the ordinary
work done in the shop.   Only twice in five years had any work been done
which required any one to go up onto the rail.   There was evidence from
which the jury were warranted in finding that the brake of the crane was
not in good order, so that the crane could not be stopped by the operator
as quickly as it otherwise could be.   The operator in this case, however,
did not apply the brake at all until after the plaintiff had been struck, and
the defect in the brake did not cause the injury in the first place.   It only
increased or aggravated it.

*Held:*  1.   The question of the defendant's negligence is to be considered,
not with reference to the general work commonly carried on in the shop;
but to the special and temporary work in which the plaintiff was engaged ;
not with reference to dangers arising from the operation of the crane to
other employees in other places, but to the danger to the plaintiff in the
work which he was doing.

2.   It was not the duty of the defendant to give special notice to the crane
operator each time the plaintiff went up onto the track.   It was sufficient
if the defendant gave the operator notice in general of the plaintiff's work
and its character and dangers.   And if the operator knew, as he did in this
case, all that could have been told him, further notice was unnecessary.

3.  The want of rules and regulations and the want of any device on the crane to give warning of its approach, cannot under the circumstances of this case, be deemed negligence on the part of the defendant.

4.  There is no evidence of the defendant's want of reasonable care in employing and retaining the crane operator.  And whether the operator had been properly instructed in the performance of his duties or not is immaterial since it clearly appears that he understood his duties so far as they related to the plaintiff while working on the special job.

5.  The plaintiff assumed all the risks of his employment, which were known to him, and he knew them all except the defect in the brake of the crane.

6.  The proximate cause of the plaintiff's injury was the negligence of the crane operator, the plaintiff's fellow servant, and this is a risk which the plaintiff assumed, and for which the defendant is not responsible.

7.  The evidence shows clearly that the plaintiff himself was guilty of contributory negligence.

8.  The negligence of the defendant in not keeping the brake of the crane in order was not an intervening negligence subsequent to the plaintiff's contributory negligence, so as to give the plaintiff a right of action for that reason.

On motion by defendant.   Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant.  Plea, the general issue.  Verdict for plaintiff for $7500. The defendant then filed a general motion for a new trial.

The case is stated in the opinion.

*William H. Looney, and Robert Treat Whitehouse*, for plaintiff.

*Nathan and Henry B.  Cleaves and Stephen C.  Perry, and White & Carter*, for defendant.

SITTING:  SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

SAVAGE, J.   Action on the case to recover for personal injuries alleged to have been caused by the negligence of the defendant company.   The verdict was for the plaintiff, and the case comes up on the defendant's motion for a new trial.   There is little dispute as to most of the essential facts.

The defendant has a machine shop at Thompson's Point in Portland, in which locomotives and cars are repaired.   The building is about two hundred and fifty feet long, and about eighty feet wide,

and it is built of brick. In the north side of the building are eleven openings or doors through each of which a track is laid so that locomotives and cars can be pushed into the building. Just inside each door, and under the track, a pit is excavated, so that workmen can conveniently work under the locomotives or cars. These pits are numbered from 1 to 11 beginning at the east end. Within the building, on the north side, over the pits, a movable electric crane for raising and moving heavy articles was operated, with trucks running on parallel rails fifty feet apart. The rails were about twenty-four feet above the floor of the shop, high enough to allow the crane to pass over locomotives standing over the pits, without touching them. Suspended from the crane was an open steel cage in which the operator of the crane sat. The crane was operated by electric power, and the operator by handling various levers could cause the crane to move back and forth, east and west, on its tracks. He could also cause the hoisting apparatus to be raised and lowered, and to move sideways, north and south, by means of a carriage under the crane itself. The crane was provided with a friction brake, consisting of a solid iron drum revolving on a shaft, surrounded by wooden friction blocks, which were compressed against it by a circular metal band operated by a foot lever in the cage. There was no gong, whistle or other device for giving warning of the approach of the crane, and the defendant company had promulgated no rules for regulating the running of the crane, or the work in the shop. The northerly rail traversed by the wheels of the crane was five inches high and rested on an I beam thirty inches high and ten inches wide on the top, and the I beam was supported by brick piers built up from the floor. The I beam was about seven or eight inches from the north wall of the building, and was stayed to the wall by anchor plates built into the wall at one end, and riveted to the I beam at the other. These anchor plates came nearly to the top of the beam. A water pipe had been laid back of the rail, on top of the anchor plates, and in April 1908, the defendant prepared to lay an air pipe on the same plates, parallel with the water pipe. No part of the ordinary busi-

ness carried on in the shop required any employee to work upon or about this rail, and no one ever had so worked, except when laying these pipes.

The plaintiff was a skilled machinist and steam fitter and piper in the employment of the defendant. He was about sixty years of age, and a man of more than ordinary intelligence. He had worked for the defendant at the Thompson's Point machine shops about eighteen years. The first shop having been burned, he had worked in the shop now in question about five years, and was entirely familiar with its appointments, and with the methods of work pursued there. He was injured, as will be hereafter described, on Tuesday, April 14, 1908. On the Saturday before, his foreman directed him to come on Sunday and commence laying the air pipe, but gave him no directions whatever how to do it. He was left to do it in his own way and time, except that he was to commence on Sunday. He and his helper worked on the pipe Sunday and Monday, and, until the plaintiff was hurt, Tuesday. They procured ladders and rested them against the crane track, and carried up pieces of the main pipe and laid them on the anchor plates beside the water pipe, and then fitted them together. They fitted Ts into the main pipe, one near each door, into which upright pipes from below were to be fitted. As the work progressed they moved their ladders from time to time. Some of the work of fitting, like putting in the Ts, was done at the bench, but the jointing of the lengths of the main pipe had to be done after they were in place on the anchor plates, and the fitting of the uprights into the Ts could only be done after the main pipe was in place and jointed. So it happened that the plaintiff and his helper a part of the time were at work at their bench in the shop, and a part of the time were working upon or around the crane track. While the placing of the main line of pipe in position necessarily required the plaintiff, or his helper, or both, to go up onto the crane track, the plaintiff tried in two different ways to fit the uprights into the Ts from below. He decided that these methods were impracticable, and then, to use his own language, "We conceived the idea that if I went up the ladder and laid down so I could get my hand down in and could see to hold

it under there, a man could catch it very readily ; and in that way we expedited the work." And the plaintiff adopted that method. He went up onto the crane track, lay down as well as he could between the track and the wall, put his left arm down between the air pipe and the water pipe, and taking the upper end of the upright pipe in his hand, held it in the proper place, while his helper, standing down on the floor, turned it into the T. The operation took from one to three minutes. While in this position, the plaintiff's body was partly above the crane track, for the top of the pipe was only three or four inches below the top of the rail.

While the plaintiff was engaged on this job, the crane was moved back and forth as the general business of the shop required. The operator knew about the work the plaintiff was doing, and where he had to work. Several times Monday and Tuesday the crane had to be stopped to allow the plaintiff to take down his ladders so that it could pass by. On Sunday, the crane at one time hit and broke a ladder. It should be said, however, that the regular operator, a young man eighteen years old, was not there Sunday. Tuesday forenoon the plaintiff went up his ladder onto the track, to assist in fitting into a T an upright pipe which was held up to him by his helper underneath. He was then, he thinks, over pit No. 7. He lay down, as before described, between the rail and the wall, with his head towards the east end of the building, and his right arm and one leg over the rail, and looked down and watched the motions of his helper. He observed, before he lay down, that the crane was easterly of him near the end of the building, and that it was at work hoisting. He had given no notice to the crane operator that he was going up at that time, and did not know whether the operator was aware of his being up there or not. While the plaintiff was lying down and helping fit the upright into the T, another employe of the defendant, not knowing the plaintiff's situation, motioned the crane operator to move the crane to the west, wishing to use it at pit No. 10. The operator obeyed the signal. He looked down and watched the movements of the man who had motioned to him, so as to know where to stop. He did not look for, or see, or think of, the plaintiff. He testified that he did not know that the plain-

tiff was on the track, that he had seen him move his ladders and go away, and that he supposed he had finished his job, but that he did not know where the plaintiff went.   But, at any rate, he moved the crane onto the plaintiff, and caused him grievous injuries.   The plaintiff did not hear the approaching crane, or have any notice of it until it struck him.

It appears that for the proper working of the brake, the friction should be slightly lubricated.   It is contended for the plaintiff, though denied by the defendant, that at this time, and for some time previously, too much oil had been applied to the friction so that the brake was apt to slip.   And the operator testified that on this occasion, when he felt a jar, he applied the brake, but it slipped, and he stopped the crane by reversing the power.   In the meantime, the plaintiff had been pushed along the track several feet by the moving crane.   We think the jury would have been warranted by the evidence in finding that the brake slipped this time by reason of there being too much oil on the friction.

There is one other disputed question, namely, whether the operator of the crane was notified to look out for, and not run upon, the plaintiff.   The preponderance of the evidence is that such notice was given, but the operator denies it, and the jury were warranted in adopting his version.

Upon this state of facts, the plaintiff alleged in his writ, and now contends, that his injury was caused by the defendant's negligence in the following particulars :—(1) by causing the crane to be started and run along the track while the plaintiff was upon it; (2) for want of a reasonably safe and suitable place to work; (3) for want of rules and regulations; (4) for want of sufficient instructions to the operator; (5) for want of special notice to the operator of the plaintiff's position from time to time; (6) for want of a gong or other means of warning persons of the approach of the crane; (7) for want of a competent person to operate the crane; and (8) for the slippery condition of the brake.   On the other hand the defendant contends that all the risks were assumed by the plaintiff, and that he was guilty of contributory negligence.

At the outset it should be observed that these questions are to be considered, not with reference to the general work commonly carried on in the shop, but to the special and temporary work in which the plaintiff was engaged; not with reference to dangers arising from the operation of the crane to other employees, in other places, but to the danger to the plaintiff in the work which he was doing. If, in this case, the defendant is to be held negligent, it must be because it failed in its duty to the plaintiff, either by doing something which it ought not to have done, or by omitting to do something which it ought to have done, for the plaintiff's safety. All other aspects of negligence are to be eliminated. In *McTaggart* v. *M. C. R. R. Co.*, 100 Maine, 223, where the alleged negligence consisted in the improper placing of a boiler and pipe, the court used this language:—"This question must be considered in the light of the defendant's duty to the deceased at the time. It was its duty to exercise reasonable care so as to place its boiler and pipe as to make it reasonably safe for him to perform any service which it had any reason to expect that he might properly do at that place by virtue of his employment. Any omission to exercise such care would be negligence as to him. It matters not whether the pipe was so placed as to be safe or unsafe as to other servants in the performance of their respective duties."

It should be observed, also, that this case is to be distinguished from those cases where a servant is set to work at a particular thing, at a particular time and place, and in a particular manner. Doubtless if a master sends a servant into a dangerous place to do a particular thing at that time, he is under the duty of exercising reasonable care to protect him from other dangers while there. If notice to others of the dangerous situation is necessary for his protection, the master is bound to give it. But here the plaintiff was set at work on a job, all the details of which were left to his own discretion and judgment. His work was partly on the track overhead, a place of danger, and partly on the floor beneath, a place of safety. He was not sent into the place of danger specially at any time. When he should go above and when he should continue below were left to his own volition. He could select his times.

The master did not undertake to interfere.  The servant was master of his own movements.  We think it was not the duty of the defendant to give special notice to other employees, or any of them, each time the plaintiff went up onto the track.  To require that would be to require unreasonable, or extraordinary, care.  It was sufficient, in this respect, if the defendant gave notice of the plaintiff's work and its character and dangers to the other employees, the performance of whose duties might imperil the plaintiff.  If any of such other employees, after notice or knowledge of the situation, failed to heed it, and injury to the plaintiff resulted therefrom, it would be the negligence of a fellow servant, and that was one of the risks which the plaintiff assumed, and for which the defendant is not responsible.

After these general statements we will discuss as briefly as we may the various points presented.  First, was the place where the plaintiff was at work suitable and safe?  We assume that it was the proper place for him to do the work.  The place was safe, so far as this case is concerned, except as it might be made unsafe by the improper management of the crane.  That was liable to happen only if the operator was negligent, or if he was ignorant, that is, without notice, or knowledge, of the plaintiff's position.  If the operator, a fellow servant, was negligent, the defendant is not liable for that.  If, however, the operator had not been informed, in some way, then we assume for the purposes of this discussion that the failure of the defendant to inform him would be proximate cause of the injury, for which it would be responsible.

Therefore the question whether the movement of the crane at that time was due to the negligence of the defendant depends upon another question, whether the operator had notice or knowledge.  While the jury may have been warranted in finding that no particular notice had been given by the foreman to the operator, that does not settle it.  The evidence is plenary that the operator knew the work the plaintiff was doing, and where it was.  He had seen the ladders, the upper ends of which rested on his track, and which had to be moved before he could pass with the crane.  He had seen the plaintiff on the ladders.  He knew everything which could have been told

him, except the precise moments when the plaintiff would have occasion to go up onto the track. He was so situated that he could see the plaintiff going up and down the ladders. He did not need to move. He only needed to use his eyes and his mind. He did not, at the time in question, give any thought to the plaintiff. We have already said that it was not the duty of the defendant to notify the operator each time the plaintiff went up onto the track. If the operator, knowing, as he did, that the work was going on, and the character of it, run the crane over the track without looking for, or thinking of, the plaintiff, it was negligence, and the negligent act of a fellow servant of the plaintiff, and it was the proximate cause of the injury. That being so, the question whether the defendant before that time was negligent in not giving notice to the operator becomes unimportant. Causa proxima, non remota, spectatur. So far as the plaintiff is concerned he cannot be said to have been harmed by the want of special notice.

It is true the operator testified that he "supposed" the plaintiff had finished his work. Assume this to be true. His only reason was that he saw the plaintiff take down his ladders and go off. He does not say where he saw him go. But the plaintiff necessarily had moved his ladders before as his work moved along. He had gone back and forth, between his bench and the track, and the operator, if attentive to his duties, must have seen all this. If the operator, then, with nothing more than he says he saw, without making inquiry or receiving any information that the work was done, moved the crane as he did, we think it unquestionably a negligent act. In fact at the time the crane was moving, and in front of it in the direction it moved, stood the plaintiff's ladder, in full view, leaning against the crane track. It needed only a glance to see it. But the operator had dropped the plaintiff out of his mind, and was intent upon something else. This was negligence as to the plaintiff, but it was the negligence of a fellow servant. It was, in no sense, the negligence of the defendant.

Next, as to the want of rules and regulations. It is the duty of a master engaged in a dangerous and complex business to make and enforce such rules and regulations for the conduct of his business

and the government of his employees as will afford reasonable protection to his servants while doing his work. *Moran* v. *R. T. & C. St. Ry.*, 99 Maine, 127. But in this case, whatever may have been the complexity of the defendant's business in other respects, and however necessary were rules for its regulation, there was nothing complex in the work which the plaintiff was doing, or in its relation to the movement of the crane. It required no rules. The situation and the danger was obvious. The only rule which could be of service would be to say to the operator, "Do not run over the piper when he is on the track." Such a rule does not need to be promulgated.

The want of a gong, or means of warning, on the crane, is complained of. We do not think that negligence can be predicated from this fact, under the circumstances. We must recall again the fact that this was a special, temporary job. It was to be done by a man who was as familiar with the premises, and the manner in which the crane was used, as any of his superiors, and this fact was known to the defendant. The crane was at all times within the view of a man on or beside the track. The plaintiff knew there was no gong, and did not rely upon any. It would be unreasonable to expect a gong or other appliance put onto the crane to warn persons on the track, when no one ever got onto the track, except at intervals of several years, and for a special purpose.

The plaintiff contends that the crane operator was incompetent. This contention seems to be based upon the fact that the operator was only eighteen years old. For there is no other evidence, aside from running the crane onto the plaintiff, which tends to support the contention. Much less is there any evidence which tends to show that the defendant failed to exercise reasonable care in employing and retaining him. And that is the measure of the defendant's duty in this respect. *Blake* v. *M. C. R. R.*, 70 Maine, 60. Of course, the age and intelligence of the operator are facts to be considered in weighing his competency. But that is not all. This operator had been employed in that capacity for nearly a year, and until the day of the plaintiff's injury nothing is shown to have occurred which in any way tended to show that he was not

competent to operate the crane.    We think there is no evidence of want of reasonable care on the part of the defendant in employing and retaining this operator in that capacity.

It is further contended that the defendant did not sufficiently instruct the operator for the performance of his duties.    This point is not tenable.    If it is intended to apply to the performance only of his general duties, it is unimportant.    Besides, whether instructed or not, he seems to have understood them, and to have performed them efficiently.    So far as his duties related to the plaintiff while working on this special job, it is clear that he understood them.    Beyond what he knew and appreciated, instructions were unnecessary.

Lastly, of the plaintiff's contentions, it is claimed, and as we have already said, the jury were warranted in finding, that the defendant was negligent in allowing the brake of the crane to become and remain in such condition that it slipped on the drum when the operator attempted to stop the moving crane.    This did not cause the crane to run onto the plaintiff, but it prevented its being stopped afterwards as quickly as it might otherwise have been done.    It did not cause the injury in the first place, but it increased and aggravated it.    And for this increase and aggravation the plaintiff claims that he can recover in any event.

The legal situation is this.    In accordance with well established principles, the plaintiff assumed all the risks which were obvious and incident to his employment.    *Demers* v. *Deering*, 93 Maine, 272.    He assumed all the risks which were known to him, and which should have been appreciated by him, or which he ought, by the exercise of reasonable care, to have known.    *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, 113 ;    *Caven* v. *Bodwell Granite Co.*, 99 Maine, 278 ; *Bryant* v. *Great Northern Paper Co.*, 103 Maine, 32.    He assumed the risk of the negligence of fellow servants. *Cowan* v. *Umbago Pulp Co.*, 91 Maine, 26.    But he did not assume the risk of defective or imperfectly working machinery which was not known to him.    It was no part of his business to know about the brake on the crane.    He did not know it and he did not assume any risk on account of it.    Therefore the plaintiff says that

if he cannot recover for the primary injury, caused by risks which he had assumed, he may recover for the additional injury caused by being pushed along on the track, when the brake did not work properly.

Without discussing this proposition, however, it is only necessary to say that we think it cannot avail the plaintiff. It is an elementary principle that an injured servant cannot recover against his master for the latter's negligence, if his own negligence contributed to the injury. On this proposition, no authorities need be cited. It seems to us from the plaintiff's own testimony, not only that he assumed all the risks which led to his injury, except that of the brake, but that he was careless in doing so, and that his carelessness contributed to the injury. · As we view it, there is no reasonable alternative to the proposition that he failed to use reasonable care under the circumstances for his own safety. He says he went up onto the track. He noticed that the crane was at work hoisting. Since the purpose of the crane was to move the articles it hoisted, this was notice to him that the crane would be likely soon to move on the track. But he lay down, head towards the crane, in the narrow space between the rail and the wall, his face downward between the rail and the pipe, his left arm down between the two pipes, and his right arm and leg over the track. A more dangerous position can scarcely be conceived. Just the kind of care which the plaintiff exercised is shown by the following extracts from his testimony :

Q. Your mind wasn't on the crane?

A. No. I had no need to have it on the crane. I don't know why I should.

Q. You didn't intend to look out for it, or take any care whether it was coming?

A. I didn't see that I had any necessity to.

Q. You were there without any thought of whether the crane was coming or not?

A. I supposed if there was good judgment taken the crane would not run me down.

Q.   So far as you were concerned you paid no attention to whether it was coming or not?

A.   The idea was that I wouldn't be up there more than two minutes, and if they were looking in the direction in which they were running the crane they would be apt to see me.

.   .   .   .   .   .          .          .

Q.   And you didn't watch out for it?

A.   l don't know as I did.

.   .   .   .   .   .

Q.   Did I understand you to say that when you went up the ladder you looked and saw the crane occupied in the eastern portion?

A.   Yes sir.

Q.   Did you, as you lay there upon the track rely in any way upon the crane's continuing occupied while you were there?

A.   I presumed it would be occupied.

Q.   Did you in any way rely upon its stopping when it came down your way on this occasion?

A.   The operator running the crane, whichever way he is running he is generally watching.

Q.   repeated.

A.   I supposed it would stop, yes sir.

And yet, he knew that situated as he was, his body was partly concealed from the eyes of the operator, who was lower than he was, he knew that he had not notified the operator of his going, and he did not know, as he says, whether the operator knew that he was up there or not.

It is very clear that the plaintiff was taking the chance of being able to finish his work before the crane would come along, or taking the chance that the operator would discover him, and we think it is equally clear that in so doing he did not exercise reasonable care.

The plaintiff claims, nevertheless, on the authority of *Atwood* v. *Railway Co.*, 91 Maine, 399 ; *O'Brien* v. *McGlinchy*, 68 Maine, 557 ; *Coombs* v. *Mason*, 97 Maine, 274, and other cases, that the plaintiff's action should not be defeated, because the negligence of

the defendant intervened, at the end, so that the contributory negligence of the plaintiff was not the proximate cause of his injury. But we think the doctrine of these cases, sometimes called "the last clear chance" doctrine, does not apply to the facts in this case. That principle applies, as these cases show, when there is some new negligence on the part of the defendant independent of and subsequent to the plaintiff's negligence, and not to a negligence already existing, as in this case.

After a very careful study of this case we feel compelled to say that the distressing injury of the plaintiff was so clearly the result of his own negligence that the verdict of the jury ought not to be allowed to stand.    Their conclusion was manifestly wrong.

*Motion for a new trial sustained.*