BERT KIMBALL *vs.* ROBERT CLARK.

York.    Opinion, January 30, 1935.

264

*Arthur E. Sewall*,
*E. P. Spinney*, for plaintiff.
*Ralph W. Hawkes*,
*John J. Higgins*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J.   General motion for a new trial by defendant, together with a special motion based on newly discovered evidence. The action is in negligence for damages resulting from ivy poisoning. No exceptions were reserved.

The plaintiff offered evidence tending to prove that on June 27, 1926, while employed by the defendant as a common laborer about the grounds of his cottage at York Harbor, he was directed to mow the bushes on a small knoll and in doing so came in contact with poison ivy and was so poisoned that he was unable to work regularly, suffered great physical discomfort, and incurred large

expenses for medical treatment. He told the jury that he not only did not know that there was poison ivy where he was directed to work, but was unacquainted with the plant and would not have recognized it if he had seen it. He stated that he first knew that he had been working in poison ivy when the defendant, after the mowing was finished, told him that he was glad the ivy had been cut off, and insists that if he had known the plant was there he would not have cut the bushes. The plaintiff is corroborated by his son-in-law, who claims to have been present when the plaintiff was poisoned and confirms his account of what was said and done at the time.

The defendant told the jury a very different story. His testimony was that in September, 1925, he and his wife were closing their cottage for the season and, in the course of conversation relative to work to be done on the grounds, called the plaintiff's attention specifically to the poison ivy on the knoll and expressed a desire to have it removed. His testimony on this point is as follows:

> "I made the remark, 'I wish I could get this poison ivy removed.' And Bert said, 'Why, I will take it out.' And I said, 'No, I don't think you better take it out because, if you remember, Charlie Mains took it out and he said it wouldn't poison him and he got very badly poisoned, so I think you had better leave it alone.' And he said no, he was not afraid of it and he would take it out. I then said, 'Well, all right, go ahead and take it out.' That ended the conversation then."

The defendant went on to say that he knew nothing more about the matter until the middle of the next June when the plaintiff told him that he was poisoned when he cut the ivy. The defendant admitted that he knew that the ivy was poisonous and that the knoll in front of his house was covered with it. His wife corroborated him in all the substantial details of his testimony.

The physicians called in the case disagreed as to the cause of the plaintiff's affliction and the probability of its having resulted from contact with poison ivy. It was undisputed that he suffered from a long continued and incapacitating skin eruption. In view of the history of the case as it appears in the record, a finding that

the plaintiff's skin eruption was due to poisoning by ivy was not clearly wrong.

It is the duty of a master to use reasonable care to furnish for his servant a reasonably safe place in which to do his work. *Charpentier* v. *Tea Company*, 130 Me:, 423, 157 A., 237; *Loring* v. *Maine Central Railroad Co.*, 129 Me., 369, 152 A., 527; *Sheaf* v. *Huff*, 119 Me., 469, 111 A., 755; *Elliott* v. *Sawyer*, 107 Me., 195, 201, 77 A., 782. In the discharge of this duty, the law requires the master to give suitable warning to his employee of any and all special risks and dangers of the employment of which the master has knowledge, or by the exercise of reasonable care should know, and which are unknown to the employee and would not be known and appreciated by him in the exercise of reasonable care on his part. *Loring* v. *Railroad Company*, supra; *Dirken* v. *Great Northern Paper Co.*, 110 Me., 374, 86 A., 320; *Welch* v. *Bath Iron Works*, 98 Me., 361, 369, 57 A., 88; *Wormell* v. *Maine Central Railroad Co.*, 79 Me., 397, 10 A., 49; see also 4 *Thompson on Negligence*, 332; *Williams* v. *Walton*, etc. Co., 9 Houst. (Del.) 322; 32 Atlantic Reporter 726. And it is settled law that, while a servant assumes the ordinary apparent risks of his employment which are obvious and incident thereto and known and appreciated by him or should have been in the exercise of reasonable care, he does not assume the risk of defects not apparent, of which he has no knowledge, existing in the place in which the master has directed him to work and is bound to use due care to make and keep reasonably safe. *McCafferty* v. *Maine Central Railroad Co.*, 106 Me., 284, 76 A., 865; *Dirken* v. *Great Northern Paper Co.*, supra.

An application of the foregoing rules to the evidence in this case does not as a matter of law entitle the defendant to a verdict. In weighing the flatly contradictory statements of the parties and their supporting witnesses, the credence to be given the one or the other was necessarily the determining factor. According to the plaintiff's version, his employer, with full knowledge of the existence of poison ivy and the dangers of contact with it, sent him, unaware of its presence and unable to recognize the plant when he saw it, in to cut the bushes where it grew. We can not assume a common knowledge of the plant which would compel its recognition. The plaintiff's case, if believed, establishes negligence on the

part of the defendant. It is not manifestly outweighed by the evidence offered in defense. On the general motion, the verdict can not be set aside.

After verdict and before judgment in the case at bar, the defendant filed a special motion for a new trial on the ground of newly discovered evidence. A Commissioner was appointed to take out testimony in support of the motion, and a transcript is certified forward.

We are of opinion that by the exercise of ordinary diligence the defendant could have discovered and produced at the trial the evidence he now offers. It consists of a bank record, always available, and a letter and sundry bills and checks which have never been out of the defendant's possession, but have been carefully filed in their proper places according to his office practice and easily discoverable if a reasonably careful search had been made. The law holds parties to the exercise of due diligence in the preparation of their cases, and public welfare as well as the interest of litigants requires that suitors should prepare their cases with reference to all the probable contingencies of the trial. A new trial will not be granted on the ground of newly discovered evidence when the moving party, by proper diligence, might have discovered such evidence in season for the trial. *Atkinson* v. *Conner*, 56 Me., 546; *Blake* v. *Madigan*, 65 Me., 522; *Smith* v. *Booth Brothers*, 112 Me., 297, 92 A., 103; *Ryan* v. *Carter & Mileson*, 125 Me., 522, 134 A., 566. No exception lies to the application of this rule unless, on all the evidence, it is apparent that an injustice has been done. *Cobb* v. *Cogswell*, 111 Me., 336, 89 A., 137; *Rodman Company* v. *Kostis*, 121 Me., 80, 115 A., 557. It is not made to appear that in the case at bar the general rule should not apply.

*Motions overruled.*